Roy Delgado FLORES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 23523.

United States Court of Appeals Fifth Circuit.

June 22, 1967.

Maurice Amidei, Fort Worth, Tex., for appellant.

Reese L. Harrison, Jr., Andrew L. Jefferson, Jr., Asst. U. S. Attys., San Antonio, Tex., Ernest Morgan, U. S. Atty., Western District of Texas, for appellee.

Before BELL and GODBOLD, Circuit Judges, and NOEL, District Judge.

GODBOLD, Circuit Judge.

Appellant was charged on a three-count indictment alleging that he, Susie Fernandez and Modesto Martinez Briones had fraudulently forged the name of the payee on a check drawn on the Treasurer of the United States, had knowingly uttered the check as true (both in violation of 18 U.S.C.A. § 495) and had possessed the check in violation of 18 U.S. C.A. § 1708. Fernandez and Briones had been charged under an earlier indictment, and Fernandez had pleaded guilty.[1]

Before trial Flores moved for a separate trial under Fed.R.Crim.P. 14. The government moved under Fed.R.Crim.P. 13 to consolidate Flores' trial with that of Briones, arguing that both defendants were "engaged in a joint enterprise, and that much of the evidence admissible against one * * * would be admissible against the others." Appellant also sought extensive pre-trial discovery.

At a hearing on the pre-trial motions, the district court ordered consolidation of the cases but indicated its willingness to consider at any time up to five days before trial any information showing that Flores would be prejudiced by the consolidation. The court requested, and the government agreed to, considerable discovery, including production of the check, prior convictions of all defendants and government witnesses and a list of government witnesses. (The record shows that Flores received before trial a copy of statements made by Fernandez.)

The government's evidence (primarily the testimony of Fernandez) tended to establish the following: Briones approached Fernandez and Guzman, her common-law husband, with the stolen check and gave it to Guzman who requested Fernandez to cash it. All three proceeded to a nearby grocery store, Fernandez wrote the name of the payee on the reverse side of the check, entered the store alone and cashed the check. She then rejoined Briones and Guzman and gave the money from the check to Briones; all three then went to a nearby drive-in restaurant where they met Flores. Briones told appellant that "he had gotten the check cashed." Flores and Briones left the restaurant.

It was stipulated that Flores' right thumbprint appeared on the check.

The government called Kenneth Wiseman, a Special Agent of the United States Secret Service, who testified that he had arrested Briones. Counsel for Briones objected to testimony of any conversations that Wiseman might have had with Briones on the ground Briones had not been taken immediately before a magistrate and had not been given the preinterrogation warnings required by recent Supreme Court decisions. The court, after excusing the jury, asked the government to develop the facts related to Briones' objection. Agent Wiseman then testified as follows:

Q. Upon arrival at your office, did you have a conversation with Mr. Briones?

A. Yes, sir, we did.

\* \* \* \* \* \*

Q. What did he say about the check, if anything?

A. He said that he had seen the check previously one day while standing in his yard, that Ray Flores brought this check to him, told him it was not his, and asked Briones to assist him in cashing it * * * Briones further stated that he looked at the check but that he refused to give him any assistance.

Counsel for Flores immediately objected that the testimony was a complete surprise and that he had been assured the day before (by government counsel) that

---

1. A fourth defendant, charged in the Fernandez-Briones indictment, was also brought to trial with those two defendants; he was charged with a similar offense which involved Fernandez but not Flores and Briones. During the trial, he changed his plea to guilty.

the thumbprint and the testimony of Fernandez were all the evidence against Flores. Counsel for the government responded that he had gone as far in pretrial discovery as in good conscience he felt he could, and acknowledged that he had not divulged the substance of agent Wiseman's testimony to appellant's counsel:

"[Appellant's counsel] asked me was there any other statements made by any other witnesses. Well, Mr. Briones is a co-defendant. He is not a witness for the government as Susie Fernandez * * * was, and secondly, this statement, if it is admissible, the jury would have to be instructed * * * not to consider it against Ray Delegato Flores."

Briones' objections to the testimony were overruled, the jury was returned and Wiseman testified to the statement by Briones. Flores moved to strike and for a mistrial on the ground that no instruction could prevent the jury from considering the statement as evidence against Flores. The district court granted the motion to strike and instructed the jury that the statement was to be considered against Briones only; the motion for mistrial was overruled.[2]

At the close of the government's case, Flores moved for an instructed verdict; this was denied. The only evidence introduced by Flores was his wife's testimony as to his birthplace, marriage and job.

The jury, again carefully instructed to consider Wiseman's testimony only in relation to Briones, acquitted Flores on counts one and two but convicted him on count three (charging possession). His motions in arrest of judgment and for an instructed verdict and judgment or acquittal were overruled and he now appeals on numerous grounds. Because we find that the motion for a mistrial should have been granted, we do not reach the other grounds asserted.

■ This court frequently has recognized in reviewing motions for severance made under Fed.R.Crim.P. 14 the rule of Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954) that it is "within the sound discretion of the trial judge as to whether the defendants should be tried together or severally." [3] We have found occasion to reverse rulings on such motions. See Barton v. United States, 263 F.2d 894 (5th Cir., 1959) where a confession by one co-defendant which implicated the appellant was introduced after a severance had been denied. In reversing and remanding for a new trial Judge Rives stated:

"The sole reliance for Mitchell's protection was the court's instruction to the jury, * * * not to treat the statement of evidence against Mitchell. Considering the substance and terms of Barton's statement, we doubt whether it was at all possible to carry out that instruction. To do so would certainly require twelve minds more disciplined than those of the average human juror."

See also Schaffer v. United States, 221 F.2d 17 (5th Cir., 1955) also reversing

---

2. When the jury was returned, Wiseman's testimony as to the statements was elicited with no preliminary qualification that it was offered only against Briones, although both the government and the district court had earlier conceded that the evidence could not legitimately be considered against Flores. The prejudice to Flores would have been lessened had the testimony been offered against Briones only, thus eliminating the need for Flores' counsel to object and, in the presence of the jury, demand cautionary instructions.

3. E. g., Peterson v. United States, 344 F.2d 419 (5th Cir., 1965); West v. United States, 311 F.2d 69 (5th Cir., 1962); Davis v. United States, 148 F.2d 203 (5th Cir.) cert. denied, 325 U.S. 888, 65 S.Ct. 1570, 89 L.Ed. 2001 (1945). For a general discussion of the problems posed by joinder of defendants, see Note, 74 Yale L.J. 553, 562–66 (1965).

for failure to grant a separate trial. In Belvin v. United States, 273 F.2d 583 (5th Cir., 1960), cert. denied, 372 U.S. 922, 83 S.Ct. 737, 9 L.Ed.2d 726 (1963), no motion for a severance had been made but during trial there was introduced a confession by one codefendant which implicated the others. The other defendants, claiming surprise, moved for a mistrial, which was overruled. Whether this was error was not reached, for this court reversed on other grounds.[4]

In the present case we find that, on the facts presented, the denial of a mistrial was error.

█ At the time of the pretrial motions there was no showing that a single trial would in any way prejudice Flores. The district court was careful to avoid the only specific possibility of prejudice then raised by Flores, which was admission of possible evidence of narcotics addiction. (The witness Fernandez was instructed out of hearing of the jury to omit any references to use of narcotics.) But in an analogous context the Supreme Court has noted that "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." Schaffer v. United States, 362 U.S. 511, 4 L.Ed.2d 921, 80 S.Ct. 945 (1960).

██ The duty of the trial court in ruling on a motion for mistrial under such circumstances is similar to its duty in ruling on a pretrial motion for severance: "[I]n any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 88 (1964). Each case must be determined on its own facts.

█ The potential prejudice to Flores was high; the statement of Briones was

direct evidence of knowing possession, and there was no other direct and little circumstantial evidence of Flores' guilt. Under these circumstances, there was a high probability that the jury would not "as a practical matter" be able to "keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him." Peterson v. United States, 344 F.2d 419, 422 (5th Cir., 1965) (quoting from United States v. Kahaner, 203 F.Supp. 78, 81–82 (S.D. N.Y.1962), aff'd., 317 F.2d 459 (2d Cir.), cert. denied, Keogh v. United States, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963).) The case was not a complex one and granting a mistrial would not seriously have inconvenienced judicial administration.

Nor was Flores' counsel derelict in failing to discover the substance of the testimony and call it to the attention of the district court within the period set for establishment of prejudice. He diligently sought pretrial discovery and obtained (upon specific request) Fernandez's statements. But the record shows no indication to him that Briones had made any statement to the arresting officer, nor did the government offer that information either to appellant or the court. Counsel was, the record establishes, genuinely and understandably surprised when at trial the statement was revealed.

█ We also must consider in the balancing process the potential prejudicial effect of the testimony in relation to its importance to the government's case. The prosecution already had introduced direct evidence (Fernandez's testimony) that Briones had actively participated in the scheme. The statement to Wiseman as applied to Briones was almost completely exculpatory. The government contends it tended to prove Briones' consciousness of guilt because it was contrary to the facts disclosed by

---

4. One commentator citing *Schaffer, Barton*, and *Belvin* refers to them as a line of cases holding that "a severance must be granted where one defendant has made a confession which is damning to a codefendant." Wright, Proposed Changes in Federal Civil, Criminal, and Appellate Procedure, 35 F.R.D. 317, 326 (1964).

Fernandez's testimony; but any such value was minimal as compared to the potential prejudice to Flores if the jury failed to disregard it. This makes the case a stronger one for mid-trial severance than if a confession by Briones had been produced. The probative value of a properly-obtained confession is so high that it might be unreasonable to expect the government, in the interest of fairness to one codefendant, to refrain from using it at a consolidated trial. But the same cannot be said for the exculpatory statement by Briones involved here. The government, if concerned about the inconvenience of two trials, would have given up little by electing not to use Wiseman's testimony.

■■ Finally, we note that the testimony presents serious questions as to Flores' Sixth Amendment right to confront witnesses against him.[5] Flores had no way to require Briones to take the stand and submit to cross-examination as to the substance of his statement. See Barton v. United States, supra, 263 F.2d at 898; Belvin v. United States, supra, 273 F.2d at 587; United States v. Echeles, 352 F.2d 892 (7th Cir., 1965). Where a jury's disregard of the trial court's instructions would result not merely in the violation of a rule of evidence but also in diminution of a substantive constitutional right, we must be less reluctant to sacrifice some of the efficiency of judicial administration in order to assure proper deliberation by the jury. Cf. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).[6]

■ As we said in Castro v. United States, 296 F.2d 540, 543 (5th Cir., 1961), "We do not believe this situation was susceptible of correction by instruction, however careful and complete."

5. In Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) the Court found a violation of the right in the introduction against the defendant of the confession of a codefendant who did not testify in court. See also Rierra v. United States, 357 F.2d 250 (5th Cir. 1966). Cf. Bonner v. Beto, 373 F.2d 301 (5th Cir., 1967), finding violative of due process a state statute making coprincipals incompetent witnesses in the trial of a principal.

6. At hearing on the pre-trial motions Flores' attorney was told by government counsel that Briones was not to be a government witness. The statement of Flores' counsel at the trial—that government counsel assured him the day prior to trial that the evidence against Flores was limited to the fingerprints on the check and the statement of Fernandez—was not denied. Factually the information was correct, since Briones' statement was inadmissible against Flores. We have no doubt, however, that as a practical matter whether or not intended so it was misleading. Regardless of any curative instructions, there was high risk that the evidence of Briones' statement might operate in the minds of the jurors to establish Flores' guilt. Had the district court been apprised that the government would offer this evidence against Briones, exposing Flores to the risk of being caught in its sweep, it then should

have granted the motion for severance.

Because of the approach we have taken, we need not discuss whether the government's failure to disclose to Flores the substance of Briones' statement or the fact that Wiseman would testify, when viewed in light of the representation discussed above, constitutes a violation of Flores' constitutional rights under Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See also Ashley v. State of Texas, 319 F.2d 80 (5th Cir.), cert. denied, 375 U.S. 931, 84 S.Ct. 331, 11 L.Ed.2d 263 (1963); Thomas v. United States, 343 F.2d 49 (9th Cir., 1965); Barbee v. Warden, 331 F.2d 842 (4th Cir., 1964). Almost all the cases construing this constitutional requirement of disclosure of evidence potentially favorable to the accused have dealt with evidence the defendant would have used at trial; here the evidence in the prosecution's possession would have enabled the defendant to avail himself of an important procedural right, that to a separate trial under circumstances where a consolidated trial might seriously prejudice him. Cf. Evans v. Kropp, 254 F. Supp. 218 (E.D.Mich.1966) where a plea of guilty to a state charge was vitiated on the ground the prosecution had failed to fully inform the court of a mental examination and diagnosis performed while the defendant was in the custody of the sheriff.

■ We conclude, therefore, that when the government insisted upon the introduction of Wiseman's testimony as to Briones' statements to him, appellant was entitled to a mistrial.[7]

Reversed and remanded.

---

7. Under Fed.R.Crim.P. 14, as recently amended, the district court, in ruling on a Rule 14 motion for severance, may order the government to produce in camera "any *statements* or confessions made by the defendants which the government intends to introduce [in evidence] at [the] trial." (emphasis supplied). If this case had been tried under the amended rules—and the government required to produce Briones' statement to Wiseman—this appeal probably would have been avoided. See Reznick, The New Federal Rules of Criminal Procedure, 54 Geo.L.J. 1276, 1284, n. 32 (1966).