**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eugene FEARNS, Jr., Defendant-
Appellant.**

**No. 74–1067.**

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1974.

Decided Aug. 12, 1974.

Elliot M. Samuels, Chicago, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CLARK, Associate Justice,* CAMPBELL, Senior District Judge,* and TONE, Circuit Judge.

TONE, Circuit Judge.

The defendant Eugene Fearns, Jr. was convicted in a trial before a jury of possession of United States Treasury checks stolen from the mail and forging, or aiding and abetting in the forging, of the checks for the purpose of receiving money from the United States. (18 U.

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Ret.) and Senior District Judge William J. Campbell of the Northern District of Illinois are sitting by designation.

S.C. §§ 1708, 495 and 2.) On appeal he argues insufficiency of the evidence, error in the admission of evidence of other crimes, and prejudicial argument by the prosecutor. We reverse the judgment of the District Court on the ground of prejudicial argument and remand for a new trial.

Fearns was charged with two other defendants in an eight-count indictment. Four counts charged unlawful possession of four checks, and the other four counts charged forgery of the same checks. One of the defendants, 21-year old Diann Morris, pleaded guilty before trial pursuant to a plea agreement under which she was to testify for the government and the government would recommend a sentence to run concurrently with a state sentence she was serving for an unrelated forgery offense. Fearns and the remaining co-defendant, John Little, were tried together.

The government's evidence consisted of the four government checks, all dated April 3, 1973, which were cashed on April 4, 5 and 6, 1973 at three banks in the area of Peoria, Illinois; proof of mailing; the testimony of the payees of the checks that they had not received them in the mail, that the endorsements thereon were not theirs, and that they had not authorized anyone to sign their names; and the testimony of Diann Morris. She testified that she received the four checks from Fearns and co-defendant John Little, both of whom she had known for about two years; and that she forged and cashed the checks and gave the proceeds to Fearns and Little, who divided the money with her. On each occasion, she said, Fearns drove her in his car to the bank where the check was cashed. She also testified that during the period from about September 1972 to April 1973, she received between twenty-five and thirty other checks from the defendants, which she endorsed and cashed, splitting the proceeds with the defendants. The defendants' objections to this evidence of other similar crimes were overruled on the ground that it was relevant to intent.

While Diann Morris recalled that she got each of the checks from either Fearns or Little and in each instance gave the money to one of them, she did not recall which of them gave her a particular check or to whom she gave the money in a particular instance, except that she usually gave it to Little because Fearns was driving.

Neither defendant offered any evidence. Only Fearns appeals from the jury's verdict finding both defendants guilty on all eight counts.

Fearns argues that the evidence is insufficient because Diann Morris testified she could not remember which defendant gave her the checks, when she received them, where they were cashed or how the proceeds were divided. While the government would have been well advised to obtain more details from the witness, her testimony, together with the other evidence, was sufficient. The bank's endorsement stamp on each of the checks shows when and where it was cashed. She testified that she got the checks from Fearns and Little, and that she gave them the proceeds after she cashed the checks. It is immaterial which of the defendants handed her the check or received the proceeds in a particular instance, since it is the clear import of her testimony that both were present on every occasion. How the proceeds were divided is of course immaterial.

■ The case will have to be retried against Fearns, however, because of prejudicial error arising from the prosecutor's argument. No evidence was offered that Diann Morris had made a statement prior to trial consistent with her testimony on the stand. Yet the prosecutor, in arguing her credibility during the opening portion of his argument, stated that prior to the return of the indictment she had made a statement "about these men being involved in this," absent which the government "wouldn't even have known about them." There was no objection at that point, but there was an objection, which the court sustained, when the prosecutor be-

gan his rebuttal argument by stating, "In connection with the last statement Mr. Gorman [counsel for Fearns] made about Diann, I want to remind you again that she gave us the story before she was ever indicted."

■ Even though defendants did not object when the prosecutor went outside the record in his opening argument, and their objection was sustained when he did so in rebuttal, the prosecutor's gross misconduct requires reversal under the plain error rule (Rule 52(b), F.R.Crim. P.). The prejudice could not have been eradicated by any action of the trial judge.

The prosecutor deliberately violated the fundamental rule, known to every lawyer, that argument is limited to the facts in evidence. He did so, not by the more oblique method of expressing his personal opinion as to the credibility of a witness (United States v. Handman, 447 F.2d 853, 856 (7th Cir. 1971); see United States v. Jackson, 485 F.2d 300, 303 (7th Cir. 1973); United States v. Grooms, 454 F.2d 1308, 1312 (7th Cir. 1972), cert. denied, 409 U.S. 858, 93 S. Ct. 141, 34 L.Ed.2d 103 (1972)), although he conveyed an aura of superior knowledge available to the government, but by the blunt assertion of a fact that was not in evidence.

■ In this court the prosecutor sought to justify his conduct by arguing that defendants' counsel, although they knew of the witness' pre-indictment statement because it had been furnished to them pursuant to 18 U.S.C. § 3500, nevertheless argued to the jury that the witness had implicated the defendants in order to help herself, and thus they invited the prosecutor's reference to that statement in argument. To begin with, the prosecutor's first excursion outside the record occurred in his opening argument and therefore could not have been an invited response. But in any event, counsel are never justified in arguing facts not of record. The prosecutor also asserts that the prior consistent statement was not admissible in evidence, as

if that somehow justified his referring to the statement in argument. If the prosecutor were right in this belief, his misconduct would be, if anything, more flagrant than if the evidence were admissible. Here, as a matter of fact, the prior consistent statement would have been admissible, since the cross-examination of the witness about her plea agreement amounted to an "implied charge against [her] of recent fabrication or improper influence or motive." Proposed Federal Rules of Evidence, Rule 801(d)(1)(B); H.R. 5463, 93d Cong., 1st Sess., p. 91 (1973). Receipt of the statement in evidence would have been attended by the right to cross-examine about it and appropriate instructions to the jury on the purpose for which they could consider it.

The prosecutorial misconduct we have discussed is sufficient to require reversal, but one other kind of statement in the prosecutor's argument also warrants our attention. In his opening argument and again in rebuttal he stated that Diann Morris' testimony was "undisputed." There was no objection or motion for mistrial.

Fearns argues that these statements amounted to comment on his failure to take the stand. In United States v. Wright, 309 F.2d 735, 738–739 (7th Cir. 1962), cert. denied, 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963), decided before Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) but under the federal rule which precluded comment on the defendant's failure to take the stand in a federal trial, the court affirmed a conviction despite the prosecutor's statement that the evidence against a defendant who had not testified was "unrefuted and undenied." Applying the test of whether the prosecutor's statement "was manifestly intended to convey or would have naturally conveyed an improper insinuation to the jury," the court viewed the statement as "a general comment on the fact that the government evidence was totally unrefuted," and pointed out that the defendant was not the only person present at

the incidents relied on by the government. The court added that in any event, the district court's instructions cured any possible "misinterpretation that may have resulted from the comments of government counsel." Some nine years later, in United States v. Handman, 447 F.2d 853, 855 (7th Cir. 1971), this court reviewed a case in which the prosecutor had argued that the testimony of a particular government witness, one Solomon, "remained intact, unchallenged and uncontradicted." Observing that "there is nothing in this record to show that anybody but Handman could have challenged or contradicted Solomon's vital testimony," the court concluded that the prosecutor's statement "could reasonably be taken" as comment on the defendant's failure to testify and was therefore prejudicial. The error was "aggravated by other improper argument," which included an insinuation of the prosecutor's personal belief in Solomon's veracity. The court indicated that the error of referring to the testimony as uncontradicted, while it could have been cured by a cautionary instruction given at the time the statement was made, was not cured by a general instruction at the end of the trial. Because a motion for mistrial preserved the error, the court did not need to decide whether the plain error rule should be applied.

■ The statements concerning "undisputed" testimony in the case at bar are similar to those in the *Handman* case. They related to a particular witness who had testified about transactions with the defendants, and were not, as in the *Wright* case, merely "a general comment on the fact that the government evidence was totally unrefuted." There were no persons other than the defendants who could have "disputed" Diann Morris' testimony, apart from alibi witnesses, who might also have existed in *Handman*. Here, as in *Handman*, the prejudice was aggravated by other improper argument. Had a proper objection been made and overruled, these statements that the witness' testimony was uncontradicted would have been reversible error under the *Handman* decision. It is unnecessary to decide whether the plain error rule should be applied, in view of our holding that other improper argument requires reversal in any event. It is sufficient to say that when a defendant has not testified a prosecutor risks reversal by arguing that evidence is undisputed when that evidence was of a kind that could have been disputed by the defendant if he had chosen to testify. While there may be cases in which such an argument can be defended, as in *Wright*, it will usually be rash for the prosecutor to predict that his is such a case.

■■ Because a new trial will be necessary, we turn to Fearns' argument that the district court erred in admitting evidence of other similar crimes, *viz.*, possessing, endorsing and cashing twenty-five to thirty other checks during the eight-month period immediately preceding the offenses charged in the indictment. This evidence is lacking in the details necessary to show all the elements of the claimed prior similar crimes. The trier of facts should not have been left to speculate that the payees of the other checks were persons other than Diann Morris who had not authorized her to endorse their names to the checks. If this missing testimony had been supplied, the facts that the checks were stolen and known to be stolen could be inferred from the circumstances. We do not believe it was necessary to prove that the checks were stolen from the mail to make the prior crimes sufficiently similar. But cf. United States v. Broadway, 477 F.2d 991, 994–995 (5th Cir. 1971). On retrial it would be prudent for the District Court to hear the witness initially out of the presence of the jury to be sure that proof will be offered of all the elements of the prior offenses sought to be proved.

■ If the deficiencies we have described can be corrected by the witness at the second trial, the evidence can properly be admitted. Evidence of other similar acts or crimes is not admissible to prove the defendant's propensity to

commit the crime charged but is admissible for any other relevant purpose unless its probative value is outweighed by its prejudicial effect. United States v. Jones, 438 F.2d 461, 465 (7th Cir. 1971); see Proposed Federal Rules of Evidence, Rules 404(b) and 403; McCormick, Evidence § 190 at 447–454 (2d ed. 1972). Here the evidence was admitted as bearing on Fearns' intent, and the jury was instructed to consider it for that purpose. We have some doubt about the admissibility of the evidence to show intent, because the acts with which Fearns was charged were hardly equivocal. United States v. Stanley, 411 F.2d 514, 516 (7th Cir. 1969), cert. denied, 396 U.S. 959, 90 S.Ct. 432, 24 L.Ed.2d 423 (1969). The government's evidence was that Fearns and Little handed the four unendorsed checks payable to strangers to Diann Morris, took her to the banks to cash them, and divided the proceeds with her. It is hardly conceivable that, if those acts were done, they were done with innocent intent. There are decisions of this court indicating that under these circumstances, it is error to admit evidence of other similar acts. United States v. Fierson, 419 F.2d 1020 (7th Cir. 1969); United States v. Stanley, supra, 411 F.2d 514 (7th Cir. 1969). Compare United States v. Marine, 413 F.2d 214, 216–217 (7th Cir. 1969) cert. denied, 396 U.S. 1001, 90 S.Ct. 550, 24 L.Ed.2d 493 (1970); United States v. Gaus, 471 F.2d 495, 498–500 (7th Cir. 1973), cert. denied, 412 U.S. 938, 93 S.Ct. 2772, 37 L.Ed.2d 397 (1973). It has been suggested that, if there is doubt about whether intent is to be an issue, the admission of the evidence should be deferred until the defendant raises the issue. United States v. Stanley, supra, 411 F.2d at 516. But compare 2 Wigmore, Evidence § 307 at 207 (3d ed. 1940): ". . . intent in virtually all offenses is material, and is therefore a part of the case to be proved in chief; and . . . unless the precise defence be disclosed in advance, the prosecution may in fairness assume that Intent may come into issue."

In view of the *Fierson* and *Stanley* decisions, the District Court should not admit the evidence of other similar acts on retrial, if intent were the only issue to which the evidence related. The evidence is, however, admissible for other purposes. The defendants having disputed the doing of the acts charged, the government was entitled to resort to proof of "a plan or system as tending to show the doing of the act." 2 Wigmore, Evidence § 315 at 217 (3d ed. 1940); United States v. Hampton, 457 F.2d 299, 302–303 (7th Cir. 1972), cert. denied, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); United States v. Jones, supra, 438 F.2d 461, 466 (7th Cir. 1971); United States v. Harrison, 461 F.2d 1127, 1132 (5th Cir. 1972), cert. denied, 409 U.S. 884, 93 S.Ct. 174, 34 L.Ed.2d 140 (1972). The object of such proof "is not merely to negative an innocent intent at the time of the act charged, but to prove a pre-existing design, system, plan, or scheme, directed forward to the doing of the act." (Wigmore, supra, § 304 at 202–205.) The forging and cashing of stolen checks carried out by the same three people in the same way with respect to twenty-five or thirty checks over an eight-month period which included the dates of the acts charged amounted to a design or system that, in Wigmore's words, "included the doing of the act[s] charged as part of its consummation." (*Id.* § 304 at 202.)

The evidence was also relevant under the aiding and abetting charges to show the relationship between Fearns and Little and Diann Morris, whose forging and uttering they were charged with aiding and abetting. Absent such a showing, it might have appeared to the jury to be implausible that Fearns and Little should entrust the forging and check cashing responsibilities to a girl of twenty, about whose skill, reliability and presence of mind they were not shown to have any knowledge. Counsel for Little, whose argument counsel for Fearns endorsed, argued to the jury, in fact, that the jury did not know whether Diann Morris "even knew these men, or if she

knew them, what her relationship was with them or either one of them." By showing the long relationship between Fearns and Little and Diann Morris and the nature of that relationship, the evidence made it more probable that they had participated with her in the transactions charged, as she testified they had.

 In view of the relevance of the evidence for the purposes stated above, its probative value clearly outweighs any possible prejudicial effect. The weighing of the probative value of evidence of other similar acts against its possible prejudice is ordinarily a task committed initially to the trial judge's discretion. We have undertaken it here, in view of the intent rationale for the admission of the evidence at the first trial, so the jury can be correctly instructed at the second trial of the purposes for which the evidence may be considered.

The judgment against appellant Fearns is reversed and the case against him is remanded to the District Court for a new trial before the same judge.

Reversed and remanded.