**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert W. RAJEWSKI,**
**Defendant-Appellant.**

**No. 75–1072.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1975.

Decided Dec. 1, 1975.

Rehearing Denied Jan. 27, 1976.

Edward M. Genson, Theodore M. Becker, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., and Guy P. Seaberg, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and SWYGERT and PELL, Circuit Judges.

PELL, Circuit Judge.

The defendant Robert W. Rajewski, Chief of Police of Calumet City, Illinois, was convicted by a jury of knowingly and willfully making and using false documents in a matter within the jurisdiction of the Small Business Administration in an application for a disaster loan, in violation of 18 U.S.C. § 1001 (Count One) and, with one Steven Ostrowsky, of knowingly and corruptly endeavoring to influence, obstruct, and impede the administration of justice by endeavoring to influence Thomas E. Toepfer, then known to the defendant to have been served a subpoena requiring his appearance before the February 1974 Grand Jury, to testify falsely before said Grand Jury as to matters then being investigated by said Grand Jury, in violation of 18 U.S.C. § 1503 (Count Two).[1]

1. The indictment also charged that Rajewski and Ostrowsky violated 18 U.S.C. § 1503 by endeavoring to influence, obstruct, and impede the due administration of justice by endeavoring to influence Ed Peters, then known to be a potential grand jury witness, to testify falsely as to matters then being investigated by the Grand Jury (Count Three), and of conspiring to impede the administration of justice, in violation of 18 U.S.C. § 371 (Count Four). De-

Viewing as we must the evidence in the light most favorable to the Government, the factual situation involved in the present case arose out of an application made by Rajewski to the Small Business Administration for a disaster loan. Certain false documents were submitted to substantiate the loan. One of these was a statement for $531.00 due Thomas Toepfer Construction Company for labor and materials for repairs at a building owned by the defendant. This bill was marked to show payment in full. The work represented by the bill was never performed. The other document was a certification on a SBA form that the repair work had been performed. Toepfer was subpoenaed before the grand jury. There was evidence to show, as charged in Count Two, that as a result of Rajewski's efforts to that end Toepfer testified falsely with regard to the work which had been the basis of the false claim, all in a manner exculpatory to the defendant.

The defendant urges reversal on the ground of numerous, interconnected errors, especially: (1) the erroneous denial of motions for severance of counts; (2) the erroneous failure to declare a mistrial; (3) the improper admission of irrelevant, prejudicial, and hearsay testimony; and (4) the insufficiency of the evidence to establish guilt beyond a reasonable doubt.

I. Severance of Counts

The defendant made an appropriate pretrial motion, pursuant to Rule 14, F.R.Cr.P.,[2] for entry of an order granting separate trial on Count One and the remaining Counts. The original granting of this motion was later revoked after the Government moved for reconsideration. Although the defendant made no express trial motion seeking severance of

counts, his objections to the admission of evidence clearly raised the problem of prejudicial joinder. Also the defendant's alternative motion for judgment of acquittal or for a new trial claimed error in the court's denial of a severance of the counts.

The defendant presents two basic reasons to support his contention of prejudicial joinder: (1) Testimony ostensibly offered in support of the obstruction of justice counts "spilled over" to the substantive SBA count; (2) Joinder caused substantial jury confusion, which the trial court left undispelled by reason of inadequate and misleading instructions.

The testimony of trial witnesses Thomas Toepfer and Ed Peters before the February 1974 Grand Jury, if believed, indicated that Toepfer Construction Company, through subcontractor Ed Peters, had performed repair work on storage bins located in the basement of Toepfer's building, and constituted evidence that the defendant had not submitted false or fictitious documents to the Small Business Administration. At trial, however, where the prosecution read extensive excerpts of the witnesses' grand jury testimony, both Toepfer and Peters testified that their earlier grand jury testimony favorable to the defendant was not true.

Since the witnesses at the trial stated that they had lied to the grand jury, the defendant reasons that the petit jurors were predisposed to believe them and to reject his defense since the grand jury had rejected their testimony by returning an indictment. He argues that the admission of the grand jury testimony, taken together with the "usual unfortunate inference" that the grand jury thought the defendant guilty, constitutes serious error, which is further exacerbated by inadequate instruction as to how

fendant Ostrowsky was acquitted on all counts, and Rajewski was acquitted on Counts 3 and 4.

2. Rule 14, F.R.Cr.P., provides in part:

"If it appears that a defendant or the government is prejudiced by a joinder of of-

fenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

the jury should gauge and utilize the Toepfer and Peters grand jury statements.

As this court has frequently observed, a denial of Rule 14 relief is reviewable only for abuse of discretion or plain error affecting substantial rights. *United States v. Isaacs,* 493 F.2d 1124 (7th Cir. 1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *United States v. Sweig,* 441 F.2d 114, 119 (2d Cir. 1971), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *United States v. Echeles,* 352 F.2d 892, 896–7 (7th Cir. 1965). The defendant must make a "strong showing of prejudice" in order to support a claim of prejudicial joinder. See *United States v. Hutul,* 416 F.2d 607 (7th Cir. 1969); *United States v. Kahn,* 381 F.2d 824, 839 (7th Cir. 1967), *cert. denied,* 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967).

In support of his argument, defendant relies upon *United States v. Quinn,* 365 F.2d 256 (7th Cir. 1966); *Flores v. United States,* 379 F.2d 905 (5th Cir. 1967); and, probably more significantly, on the *en banc* opinion in *United States v. Pacente,* 503 F.2d 543 (7th Cir. 1974) (*en banc*), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974).

In *Quinn,* this court held that the defendant was greatly prejudiced by denial of his severance motion which, on the facts of that case, was an abuse of the trial court's discretion. The court found that the offenses alleged in the first two counts were based on a transaction separate and distinct from that relied on in the last two counts, and that the first two charged offenses were not of the same or similar character as the latter charges. A reading of the record, the arguments, and the colloquies between judge and counsel convinced the court that the case was highly confusing from both the legal and evidentiary standpoints. The trial judge had difficulty grasping the Government's charges contained in the different counts and the relation which they bore to each other.

Moreover, Government counsel in numerous respects had difficulty in explaining satisfactorily the Government's position. The court concluded that even a proper charge to the jury would not have prevented a contaminated resolution of the issues presented in the latter counts. On the facts of that case, therefore, the court found compelling reasons for severance.

In *Flores,* the Government had not disclosed the substance of a Secret Service Special Agent's testimony to the defendant's counsel. Moreover, the agent's testimony as to a statement given by co-defendant Briones presented direct evidence of a possessory crime where "there was no other direct and little circumstantial evidence of Flores' guilt." 379 F.2d 905 at 909. Under these circumstances, the court found that there was a high probability that the jury, as a practical matter, would not be able to keep separate the evidence relevant to each defendant. Not only did the record establish that counsel was genuinely and understandably surprised when the statement was revealed at trial, but the potential prejudicial effect of the testimony in relation to its minimal importance to the Government's case was extremely high. A serious Sixth Amendment question lurked in the case, and the Fifth Circuit concluded that the situation was not susceptible of correction by instruction, however careful and complete. *Id.* at 910.

We have no difficulty concluding that the factual circumstances of the present case are singularly different from those in *Quinn* and *Flores.*

The more important question in this appeal evolves from the two *Pacente* decisions. In *United States v. Pacente,* 490 F.2d 661 (7th Cir. 1973), the panel concluded that a trial of the substantive count with a false declaration count was prejudicial to the defendant. The panel was not persuaded that the court's limiting instruction would cure any prejudice that might have resulted from trying the two counts together. Defendant Pa-

cente had himself testified under oath before the grand jury. The subsequent return of an indictment charging extortion and the making of a false declaration, the panel concluded, placed him in a difficult position. Should the defendant testify concerning the substantive extortion count, the petit jurors' knowledge that the grand jurors believed the defendant to have lied had the effect of informing them that his testimony was not to be believed. If he chose to testify, the defendant was impeached as soon as he reached the witness stand. If he chose not to take the stand, the false declaration count substantially reinforced the substantive extortion count. 490 F.2d at 664.

In the *en banc* rehearing of *Pacente, supra,* the majority of this court expressly noted, 503 F.2d 543, 547 n.7a, that the rationale of the panel's earlier decision had been rejected in *United States v. Isaacs,* 493 F.2d 1124, 1159–1160, 1167 (dissenting opinion), 1169 (dissenting opinion on petition for rehearing), (7th Cir. 1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). The *Pacente en banc* majority opinion recognized it was conceivable that "a trial juror may be influenced in deciding to believe a witness' testimony by the fact that the grand jurors heard the same testimony and did not believe it." 503 F.2d 543 at 547. However, it was held that it was an unwarranted overrefinement to speculate that trial jurors would fail to decide the issues of fact according to their own proper evaluation of the evidence. *Id.*

The defendant concedes that *Pacente II* is not exactly similar to the present case, inasmuch as it focused on the false grand jury testimony of the *defendant himself,* not unindicted witnesses. The defendant contends, however, that because of the absence of proper limiting instructions the indirect admission of the grand jury testimony was prejudicial error.[3] The basic complaint concerns the practical spillover effect. The theory of the admission, the defendant asserts, was that the grand jury testimony was material to Counts Two, Three, and Four, but the "substance and nature of the statements before the grand jury that Toepfer and Peters declared at trial to have been false disclose that they pertain almost exclusively" to the Count One charges. The argument in *Pacente* was that the defendant's credibility was in issue and that it was tainted by the fact that the trial jury by the joinder of counts was made aware of the fact that another jury had disbelieved his sworn testimony. This is a far cry from the present case. Here the Government was putting on witnesses and, in effect, asking the jury to find that their testimony was credible. Yet that very testimony could well have been the basis for finding a lack of credibility since it reflected two entirely inconsistent versions, each under oath. While the Government obviously did not put the testimony in for the purpose of impeaching its own witnesses, the defense, nevertheless, was handed an argument to the effect that they could not be believed. Rajewski, unlike *Pacente,* cannot claim that a grand jury finding reflected directly upon his credibility.

*Pacente II* did indicate the importance of proper instructions. The court stated:

"We think these [limiting] instructions were a meaningful protection against the possibility that the trial jurors would give weight, in considering whether to convict on Count I, to the determinations the grand jurors made in indicting on Count II." 503 F.2d 543, 548.

The contextual differentiation between *Pacente* and the present case is important in another respect. In the former case, there was reason to make it clear, as the trial judge did there, that the testimony given before the grand

---

3. In addition to the pre-trial motion for severance, defendant Rajewski objected to the admissibility of portions of the grand jury testimony of witnesses Toepfer and Peters on the basis that it was inadmissible hearsay. We consider that contention in Part III of this opinion, which discusses the numerous claims of evidentiary errors.

jury applied only to one specified count. The reason, of course, was that the lack of the grand jury's belief in the verity of the testimony directly reflected upon the issue of the defendant's credibility. That, as we have previously pointed out, was not the situation here.

From our reading of the record, we are convinced that any danger of spillover or substantial confusion was so minimal as not to be the basis for reversal. The primary theory for the introduction of the disputed testimony, now claimed to demonstrate that severance of counts should have been granted, was sufficiently clear that we must assume the jury understood that to which the proffered evidence pertained. If the jury can reasonably be expected to keep the evidence separate as to each count and each defendant, severance should be denied. See *Tillman v. United States,* 406 F.2d 930, 935 (5th Cir. 1969).

Finally, while we have spoken of the primary theory upon which the challenged testimony was introduced, we are not persuaded that the testimony was not in any event admissible as to all counts. On the one hand, the accumulated evidence of fraud tended to establish the motive for Rajewski's obstruction of justice, and, on the other hand, the accumulated evidence of the grand jury proceedings and the events leading up thereto tended to establish Rajewski's guilty consciousness of the fraud. The two facets of the evidence were mutually dependent upon and inextricably connected with one another, in spite of the fact that the evidence proving them individually was not identical. The facts were relatively simple and readily susceptible of compartmentalizing and the supportive evidence was offered separately.

In sum, it appears clear that if severance had been granted of the counts, the evidence in the separate trials would have been substantially the same as was presented in toto in the one trial. We cannot, under these circumstances, say that the failure to sever the counts constituted an abuse of discretion or reversible error.

## II. The Mistrial Motion

Count One charged the defendant Rajewski with submitting to the Small Business Administration documents containing false, fictitious, and fraudulent entries in substantiation of property losses he had previously claimed in a written application for a disaster loan. One document at issue was an invoice for $531 due Thomas Toepfer Construction Company for labor and materials for repairs at the Rajewski home. The other document was an SBA Completion Certificate, Form 1018 (9–72), which certified that Toepfer Construction had completed certain work and delivered materials. The indictment alleged that no agents or employees of the Construction Company performed any repairs at the Rajewski building, and that no materials were ever delivered at any time.

At trial, Ed Peters, as a Government witness, testified to a conversation he had with co-defendant Steve Ostrowsky after Peters had appeared before the grand jury.[4] In response to a question, Peters related that Ostrowsky had stated, "The kid did the job himself." The defendant moved for a mistrial, outside the presence of the jury, on the ground that he could no longer receive a fair trial, and here argues that the denial of the motion constituted reversible error.

4. During a conference between Toepfer and the defendant after the former had received a grand jury subpoena, Toepfer had declined Rajewski's suggestion that Toepfer testify he, Toepfer, had personally done the repair work. Rajewski stated Toepfer might be able to get someone to say that he did the work so that Toepfer would not have written records, having merely passed the work on to someone else. Subsequently Peters was secured and did testify before the grand jury that he, Peters, did the work. At trial, Peters acknowledged that his grand jury testimony was false. Peters appears not to have been totally aware of what was going on other than that he somewhat foolishly responded to the call of Ostrowsky, a long-time acquaintance, who had asked him to do a favor for a friend.

A central issue in the case was whether or not the Toepfer Construction Company had performed work in the basement of the Rajewski home. If the defendant had himself done the repair work, if any were done,[5] the Ostrowsky statement, made some time after the end of the conspiracy charged in Count Four, was evidence that the $531 paid receipt was false and fictitious.

The defendant argues, "the kid" could refer only to Defendant Rajewski. In effect, therefore, Ostrowsky's alleged statement recited that the receipts were phony because of the fact that Rajewski himself did the work.

As the contention is thus presented by Rajewski, who relies, *inter alia*, on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); and *United States v. Guajardo-Melendez,* 401 F.2d 35 (7th Cir. 1968), the prejudice might seem arguably sufficient to require a reversal. However, our view of the matter in the context of the complete record indicates that the contention is not well taken.

We note the following:

(1) During the direct examination of Peters, he was asked to relate the conversation he had had with Ostrowsky. This conversation was at the latter's place of business and occurred the next day after some FBI agents had visited Peters. While the exact date of this conversation was not specified, it would appear from other parts of the record that it was subsequent to Peters' March appearance before the grand jury.[6] When the question was first asked, objection was made on behalf of Rajewski. This objection was sustained as to that defendant unless the conversation was tied in to him. It was not and we discern no effort on the part of the Government to indicate to the jury that the evidence did pertain to Rajewski. Upon a conversation question being again asked, the court stated "[a]t the present time, consider the evidence only being adduced as to Mr. Ostrowsky with whom the conversation was being held."

(2) Following these delimitations, the following then occurred:

"Q. What did Steve Ostrowsky say to you after you explained the situation to him?

A. He said that he did the job himself, the kid did the job himself."

There was no reference to Rajewski in the testimony which had been admitted only as to Ostrowsky, and, as the district court observed in ruling on the post-trial motion, the statement was ambiguous. Indeed, since the entire testimony at this particular point was directed toward proving Ostrowsky's culpability, the statement was quite ambiguous not only to the identity of "the kid" but there was no necessary tie-in with any particular job or "situation." There was no further inquiry on the subject while Pe-

---

5. More than two-thirds of the Toepfer billing was for removing, replacing, and restaining damaged plywood and miscellaneous lumber on storage cabinets in the basement. Rajewski did not testify and we fail to find any direct or affirmative evidence in the record that anyone did any repair work on the cabinets.

6. Count Four charged Rajewski and Ostrowsky with conspiracy with regard to influencing Peters' (and Toepfer's) testimony before the grand jury. The district court, in ruling on the defendant's post-trial motion, observed in part that in its recollection the conspiracy had not terminated at the time the statement was made. While there is a theory of continuing conspiracy for the purpose of cover-up, *cf., United States v. Donner,* 497 F.2d 184, 191 (7th Cir. 1974), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 641, the Government here has made no such contention and the gist of Count Four was that the conspiracy had as its purpose the influencing of the testimony. It would appear once the testimony had been given that the conspiracy had ended and the testimony of the co-conspirator, being hearsay, would not ordinarily be admissible against Rajewski. Nevertheless, we cannot say that it was patent to the jury that the conversation occurred after the grand jury testimony. One of the overt acts charged was a conversation between Ostrowsky and Peters allegedly occurring sometime in early February.

ters was on the stand. When Ostrowsky, who was only three years older than Rajewski, testified, although he was asked on direct examination about another conversation with Peters subsequent to Peters' appearance before the grand jury, the matter of the reference to the kid doing a job was not pursued either on direct or cross examination. Ostrowsky did testify that Peters was a very good carpenter and "he has jobs, he does a lot of jobs."

(3) In subsequent colloquy out of the presence of the jury, the trial judge indicated that he was prepared to grant a motion to strike the testimony and instruct the jury to disregard it because he didn't think it particularly relevant; however, as he pointed out, no motion to strike the testimony had been made. Counsel for the defendant insisted, however, that the reference which the trial court did not deem "particularly prejudicial" could not be obviated by a motion to strike but mandated a mistrial. The court stated it would not give a limiting instruction on its own motion. The Government stated it was agreeable to a limiting or cautionary instruction. We come away from an examination of the discussion between the judge and the respective counsel with the impression that there was more concern with an attempt to make a record that might call for a reversal in the event of an adverse verdict than there was in making it plain to the jury, which the court agreed it was willing to do, that the jury should disregard the particular testimony altogether.

We agree with the district court that the "statement was such a minor, offhand comment in the midst of substantial evidence of the defendant's guilt that we do not see how it could have prejudiced him."

In connection with this matter, the defendant also argues that his trial should have been severed from that of Ostrowsky; however, no motion for separate trial was made, only a motion for severance of Count One from the remaining counts. We have previously discussed this issue. Even if the counts had been severed, Ostrowsky and Rajewski were charged together in Count Four with conspiracy and Counts Two and Three substantively.

## III. Evidentiary Errors

### A. Toepfer-Peters Grand Jury Excerpts

■ The defendant claims that the permitting into evidence of excerpts from Toepfer's and Peters' grand jury testimony being hearsay was erroneous. He argues that the prosecution sought to introduce prior inconsistent statements as substantive rather than impeachment evidence. This argument is meritless. Clearly, the prior inconsistent statements were not offered to impeach the Government's own witness. Neither were they offered for the truth of the matter stated, because the statements would have proved exculpatory to the defendant if believed. We find persuasive the Government argument that the statements were offered to establish the fact that both Toepfer and Peters had lied to the grand jury, as instructed by Rajewski, to accomplish the obstruction with which the defendant was charged. As such, the evidence was clearly probative of the issue in Count II.

### B. Toepfer-Herron Conversations

■ Both Thomas Toepfer and Joseph Herron testified to conversations which were hearsay insofar as Rajewski was concerned. The conversations, none of which were in the presence of Rajewski, dealt with Rajewski's request for a fictitious receipt, the delivery of an envelope from Toepfer to Herron, and then to Rajewski, Toepfer's receipt of a subpoena, and his request that Herron contact the defendant about a meeting. The defense claims that the Government offered these conversations to prove the truth of the facts related. Unquestionably relevant, the challenged testimony regarding the Herron-Toepfer conversations was offered to establish a foundation for evidence of non-verbal activity and provided a connecting link by establishing that Herron was a contact point between Toepfer and the defendant.

The testimony was admissible for the purpose for which it was offered, *i. e.,* to connect a sequence of events.

## C. Helen Payne

■ The defendant challenges as irrelevant the testimony of Helen Payne, one of the tenants in his building. Her testimony, if believed, tended to establish that Rajewski had never suffered flood damages in his basement on August 25, 1972. She testified that she saw no water on the basement floor, smelled no odor which could have followed water damage, suffered no damage to any of the items she stored on the floor of her storage bin, and had seen no repairs made to the storage lockers during her tenancy.

One of the items Rajewski claimed to be damaged by the supposed flood was storage lockers, a principal item listed as repaired in the $531 Toepfer repair bill. Mrs. Payne's testimony directly contradicted Rajewski's assertion. In the face of Payne's explicit contradiction of the truth of Rajewski's written claim in the SBA form, the relevancy of her testimony is patent.

## D. Agent Kusserow

On September 5, 1973, during the course of an investigation of the SBA disaster loan, Special Agent Kusserow of the FBI interviewed Rajewski. The defendant told Kusserow that he had suffered severe flood damage in the basement of his apartment building. He said that the storage bins had to be repaired at a cost of approximately $500; that he had used the services of a man named Toepfer for the repairs which were made. The defendant claims that the Government used Kusserow's narration of the interview in order to prove criminal propensity of defendant Rajewski by referring to uncharged crimes. In his SBA application, Rajewski claimed casualty damages for panelling, drain tile, electrical wiring, a lawn mower, a snow blower, a washer and dryer, a jig saw, a battery charger, a liquor bar, table and chairs, linens and clothing, and carpeting. Since Count I contained no charge of false or fictitious claims regarding these items, but since the Kusserow testimony related conversations the agent had had with Rajewski about these items, it is contended that this portion of the testimony was immaterial, irrelevant, and prejudicial since it left the inference that the defendant had cheated in respects relating to the disaster loan other than as charged in the indictment.

■ Kusserow's narration of the interview, however, was not offered for the truth of the matters asserted. Rajewski's remarks about the various damaged items, if offered for their truth, would have been exculpatory to Rajewski. Nor was this an instance where the government introduced extrinsic evidence of similar acts to establish motive or intent. The agent's testimony served only the purpose of demonstrating the defendant's state of mind at the time he made exculpatory statements which the jury, on the basis of the testimony of Payne, *supra,* and Mika, *infra,* could have determined were false in respect to the common denominator of the indictment charge that there was flood damage to the basement and its contents. We cannot agree with the defendant's contention that the Government failed to tie-up the evidence, a basis on which it was admitted. It is well settled that untrue exculpatory statements may be considered as circumstantial evidence of the defendant's consciousness of guilt. See *United States v. Kilpatrick,* 458 F.2d 864, 867 (7th Cir. 1972). See also, *United States v. Riso,* 405 F.2d 134, 138 (7th Cir. 1968), *cert. denied,* 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969).

## E. Raymond Mika

Raymond Mika, a hardware clerk, testified that the defendant had asked him to write out receipts for a Dremel sander and a Mall saw, but that he did not know whether such a sander had ever been sold to Rajewski, and that the store's last sale of a Mall saw had taken place approximately twenty years earlier. The Government offered this testi-

mony, together with the sale receipts, as evidence of similar acts to show intent or a common scheme.

■ On appeal, defendant argues that the Government has not proved clearly and convincingly that the other acts of concealment occurred. Tacitly conceding that, with appropriate instructions, similar act evidence is admissible, the defendant contends, citing *United States v. Fearns,* 501 F.2d 486 (7th Cir. 1974), that the jury should not have been permitted to speculate that the receipts were in fact false. In this case, however, there is no real question about jury speculation. Mika expressly testified that Rajewski had given him the verbatim information written on the receipt, that the sales slips were backdated, and that none of the three snow blowers carried in stock by the store was ever sold or given to Rajewski.

Moreover, defendant misreads the thrust of the *Fearns* discussion. In that case, the court expressly stated that, if certain described deficiencies could be corrected by the witness at the second trial, the evidence could properly be admitted. Expressing its doubt about the admissibility of evidence to show intent, 501 F.2d 486, 491, the *Fearns* court ruled that the government was entitled to resort to proof of "a plan or system as tending to show the doing of the act." *Id.;* see 2 Wigmore on Evidence § 315 at 217 (3d ed. 1940). Intent was hardly an issue in *Fearns,* 501 F.2d at 491, but here it was incumbent upon the Government to prove that Rajewski intentionally submitted false documents to the Small Business Administration. Alternatively, we conclude that the evidence regarding the procurement of false receipts met the "clear and convincing" standard propounded by the defendant.

■ We have examined all of the contentions advanced by the defendant regarding the admission of evidence, and we hold that the trial court committed no error in its evidentiary rulings. We have considered defendant's contention that there was insufficient evidence to prove the defendant guilty beyond a reasonable doubt of Counts I and II of the indictment, and we conclude that the direct and circumstantial evidence of guilt was not only sufficient but was on the overwhelming side.

## IV. Jury Instructions

The defendant alleges prejudicial error in the court's refusal to give his tendered instructions Nos. 4 and 16.[7] The defendant contends that an improper presentation of the Government's case masked witness Toepfer's status as a perjurer. Arguing that Toepfer was something more than an accomplice testifying in the hopes of currying favor with the Government, the defendant reasons that the grant of the standard credibility, accomplice, and informer's instructions was insufficient to present the case to the jury in a fair manner.

■ In passing on the propriety or correctness, the effect, or the meaning and sufficiency of a particular instruction, all the instructions must be considered, or construed, as a whole; the propriety of an instruction is to be considered in context. 23A C.J.S. Criminal Law § 1321(1) at 801 (1961). In the context of this case, as disclosed in the record, we conclude that the district court committed no error in denying defendant's tendered instructions.

---

**7.** Defendant's Instruction Number 4 reads as follows:

"The testimony of an admitted perjurer should always be considered with caution and weighed with great care."

Defendant's Instruction Number 16 reads as follows:

"The testimony of a witness who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed with greater care and scrutiny than the testimony of an ordinary witness. It should be received with suspicion and acted on with caution. The jury must determine whether the witness's testimony has been affected by his interest, or his prejudice against the defendant."

In the first place, the court gave the standard credibility, informer's, and accomplice testimony instructions. See Manual on Uniform Jury Instructions in Federal Criminal Cases, 33 F.R.D. 523, 573–580 (1963). Regarding the testimony of accomplices, the court expressly stated that "such testimony is always to be received with caution and weighed with great care." In general terms, with no specific reference to witnesses Toepfer and Peters, the court stated:

"The testimony of a witness who provides evidence against a defendant for immunity from punishment or prosecution must be examined and weighed with greater care than the testimony of an ordinary witness. The jury must determine whether such a witness's testimony has been affected by the grant of immunity."

The court also gave the *falsus in uno, falsus in omnibus* instruction approved in *United States v. Kahn*, 381 F.2d 824, 835 (7th Cir. 1967), *cert. denied*, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661.

A careful reading of the record makes clear that the concerns of the defendant were properly handled by the trial court. Defendant's Instruction No. 16 relates closely to the uniform informer's instruction, but adds as a middle sentence the words, "It should be received with suspicion and acted on with caution." No precise formula for the degree of caution to be specified has been required in this circuit.

 As a general rule, a large discretion is vested in the trial judge as to the language to be used in an instruction. See 23A C.J.S. Criminal Law § 1300 at 726 (1961). In forming a charge on the elements bearing on credibility of witnesses, the judge is not to be bound to a hard and fast formula as to each phase of his charge, but it is proper to instruct the jury as to the matters which they may or should consider in determining the question involved. *Id.* at § 1257, at 635.

The cases cited by defendant do not help him. In *United States v. Wasko*, 473 F.2d 1282 (7th Cir. 1973), this court reversed a conviction for the sale of LSD where the trial court omitted to give an accomplice instruction. Here, as previously noted, the court expressly granted an accomplice instruction. This salient fact also renders inapposite the other cases on which defendant relies. In *United States v. Davis*, 439 F.2d 1105 (9th Cir. 1971), the guilt of the defendant rested almost entirely upon the testimony of an accomplice. The defendant had requested the trial court to give an instruction to the jury that the testimony of an accomplice should be viewed with caution, but the trial court refused to do so. Under these circumstances, the court found prejudicial error and reversed the conviction. In *Tillery v. United States*, 411 F.2d 644 (5th Cir. 1969), the defendant had neither sought, nor pressed as error, the denial of an accomplice testimony instruction. The court recognized that the failure to warn a jury about accomplice testimony was not necessarily reversible error in all cases. It found, however, that the tainted testimony of accomplice Padgett was the only direct evidence the Government had against the defendant. Under these circumstances, the court ruled that, in a crucial evidentiary situation, where the evidence of the accomplice might be incredible or unsubstantial, the trial judge was under an obligation appropriately to apprise the jury of the potentially unreliable nature of the accomplice's testimony.

The defendant argues that the accomplice instruction given in this case was far less direct than that given in *United States v. Echeles*, 222 F.2d 144, 160 (7th Cir. 1955), *cert. denied*, 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739,[8] quoted with apparent approval in *Wasko*, 473 F.2d at

---

**8.** "If you believe that any witness who testified in this case actually took part in the commission of a crime, if in fact you believe from all the evidence that a crime or crimes were committed, then that witness is considered an accomplice and his testimony should be received with care and caution and scrutinized carefully."

1284, which defendant reads as mandating the particular form of instruction.

Although the rule that the testimony of an accomplice must be received with great caution is frequently enunciated, when the present issue is dealt with in the light of the discretion accorded the trial judge in formulating the exact language to convey the thought, we read *Echeles* and *Wasko* as merely establishing an acceptable, but not an exclusive, formulation.

With regard to the defendant's tendered instruction No. 4, in the absence of any ambiguity or secrecy regarding Toepfer's undenied status as a perjurer, the jury was adequately apprised by the court's instructions that because of that fact they could disregard his testimony entirely.

Viewing the trial as a whole, we are convinced that Rajewski was not denied a fair trial. For the reasons given herein with regard to specific claims of error, we affirm the judgment of conviction as to both counts.

Affirmed.