**UNITED STATES ex rel. Frank BRADLEY, Petitioner,**

v.

**Neil F. HARTIGAN and Michael P. Lane, Respondent.**

**No. 85–2128.**

United States District Court,
C.D. Illinois,
Danville Division.

June 24, 1985.

19. *People v. Spinelli*, 35 N.Y.2d 77, 82, 358 N.Y. S.2d 743, 748, 315 N.E.2d 792, 795 (1974).

Carey J. Luckman, Pontiac, Ill., for petitioner.

Mark Rotert and Jill Wine-Banks, Asst. Attys. Gen., Chicago, Ill., for respondent.

## FINAL ORDER

BAKER, Chief Judge.

### I. FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Following a criminal jury trial, the petitioner Frank Bradley was convicted of indecent liberties with a child and sentenced to four years imprisonment. On direct appeal the Illinois Appellate Court affirmed the conviction. *See People v. Bradley*, 113 Ill. App.3d 1172, 75 Ill.Dec. 384, 457 N.E.2d 174 (4th Dist.1983). The only claim raised by Bradley in his appeal from conviction was that he should have been granted a new sentencing hearing because the trial court had failed to consider the alternative of periodic imprisonment. His petition for leave to appeal to the Illinois Supreme Court was denied.

After his denial of leave to appeal to the Illinois Supreme Court, Bradley filed a petition for relief under the Illinois Post-Conviction Hearing Act. Ill.Rev.Stat. ch. 38, Para. 122–1 *et seq.* (1983). The petition alleged that the statute under which Bradley was convicted was unconstitutionally vague; that the trial court lacked jurisdiction because the information charging him was defective; that he was denied a preliminary hearing and probable cause determination on the charge for which he was convicted; that his constitutional guarantee against being placed in jeopardy twice for the same offense was violated; that the admission of a caseworker's testimony violated his constitutional right against self-incrimination and his right to assistance of counsel; that errors occurring at trial denied him due process of law and deprived him of a fair trial; and that the cumulative effect of the alleged errors deprived him of a fair trial. Bradley further argued that all of the above errors demonstrated that he was denied effective assistance of counsel at trial and on direct appeal of his conviction.

The Circuit Court of Livingston County, Judge Caisley presiding, held that Bradley had failed to raise any issues of constitutional magnitude and that Bradley had, in any case, waived the alleged errors by failing to object at trial or to raise them on direct appeal. The Circuit Court additionally found that neither Bradley's trial counsel nor appellate counsel were incompetent. *See* Docket Order of Circuit Court, Judge Caisley (Livingston County, Jan. 4, 1984).

In his appeal from the Circuit Court's dismissal of his post-conviction petition, Bradley argued that the appellate court should consider all of the issues raised in his petition for post-conviction relief because fundamental fairness required the doctrine of waiver not be applied to the substantive violations of his constitutional rights.

The appellate court stated that when "an appeal is taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues decided by the court and all issues which could have been presented are deemed waived." *People v. Bradley*, 128 Ill.App.3d 372, 377, 83 Ill.Dec. 701, 470 N.E.2d 1121 (4th Dist.1984) (citing *People v. Brown*, 52 Ill.2d 227, 287 N.E.2d 663 (1972)). A waiver would not be invoked in post-conviction proceedings, however, where the "application of the waiver doctrine would be manifestly inconsistent with fundamental fairness". *Bradley*, 28 Ill. App.3d at 377, 83 Ill.Dec. 701, 470 N.E.2d 1121 (citing *People v. Adams*, 52 Ill.2d 224, 287 N.E.2d 695 (1972) and *People v. Hanby*, 32 Ill.2d 291, 205 N.E.2d 456 (1965)). The appellate court stated that the issue to be determined was whether Bradley's post-conviction petition presented a substantial showing of a denial of constitutional rights, which may not be deemed to have been waived by failure to have presented the issue of denial of a constitutional right to the appellate court upon appeal of conviction. *Bradley*, 28 Ill.App.3d at 377, 83 Ill.Dec. 701, 470 N.E.2d 1121.

The appellate court found that Bradley's post-conviction petition presented no substantial showing of a denial of constitutional rights in that all of Bradley's claimed errors were without merit. Thus, the court ruled, the claimed errors must be deemed waived. *See id.* at 383, 83 Ill.Dec. 701, 470

N.E.2d 1121. The court additionally concluded that Bradley received competent representation based upon his trial counsel's performance throughout the proceedings, and that Bradley also received competent representation by counsel on appeal. *Id.* The Supreme Court of Illinois denied Bradley's petition for leave to appeal the decision of the appellate court of Illinois affirming the trial court dismissal of his petition for post-conviction relief.

On February 27, 1985, Bradley petitioned this court for writ of habeas corpus stating that he was in immediate risk of being required to surrender to the Livingston County Sheriff for transfer to the Illinois Department of Corrections to begin serving his four year term of imprisonment. The petitioner's motion to be enlarged on bail pending disposition of the habeas petition was allowed. On February 28, 1985, the court ordered the respondents to show cause within twenty (20) days why a writ of habeas corpus should not issue. *See* Order of February 28, 1985. On March 6, 1985, the cause was allotted for hearing on March 18, 1985, on objections of the respondents to the enlargement of Bradley on bail. Due to a conflict in the court's calendar, the hearing set for March 18, 1985, was held on March 22, 1985. The hearing was held on the respondents' objections to Bradley's enlargement on bail, the respondent moving the court to reconsider the setting of bond. The motion for reconsideration of the court's order setting bond was denied, and the cause was allotted for hearing on the merits of the petition on March 28, 1985, at 1:30 p.m. On March 27, 1985, respondents moved for summary judgment against the petitioner.[1]

## II. REVIEWABILITY OF CLAIMS

The petitioner Bradley was charged by information by the State of Illinois for two counts of indecent liberties with a child,

pursuant to Ill.Rev.Stat. ch. 38, §§ 11–4(a)(1) and (3). In information No. 81–CF–220, petitioner was accused of having sexual intercourse with his fourteen-year-old daughter (Count 1) and of engaging in lewd fondling of his daughter (Count 2) on November 2, 1981. In information No. 81–CF–234, petitioner was charged with the lewd fondling of his fourteen-year-old daughter on November 3, 1981. Prior to trial by jury, information No. 81–CF–234 was dismissed, with prejudice, by the court on the motion of the state to *nolle proseque* that charge. The petitioner was tried on the counts in information No. 81–CF–220; the petitioner was acquitted on Count 1 alleging sexual intercourse, but was convicted on Count 2 alleging lewd fondling. The petitioner was thereafter sentenced to four years imprisonment.

The petitioner seeks a writ of habeas corpus from this court to prevent his incarceration on the state court conviction. Petitioner raises ten claims for habeas relief, the same ten claims which were raised before the circuit court at his post-conviction proceeding. The petitioner has exhausted his available state remedies as required by 28 U.S.C. § 2254 and *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Where a defendant has failed to abide by a state procedural rule and is thereby barred from litigation of a constitutional claim in the state courts, the state prisoner may not obtain federal habeas corpus relief absent a showing of "cause and prejudice". *Reed v. Ross*, —— U.S. ——, ——, 104 S.Ct. 2901, 2906, 82 L.Ed.2d 1 (1984); *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977); *Weber v. Israel*, 730 F.2d 499, 502 (7th Cir.1984). In the case at bar, the Circuit Court of Livingston County, on his post-

---

1. On March 28, 1985, a hearing was held on Bradley's habeas corpus petition. Arguments were heard and summary judgment was entered in favor of the respondents and against the petitioner. The writ of habeas corpus was denied and the court's order of February 27, 1985, enlarging the petitioner on bail pending the disposition of the petition was vacated and set aside. The court stated that a written order was to be entered. This is that written order.

conviction petition, found that Bradley had waived his right to attack his conviction with these constitutional claims because he had failed to raise these claims at the appeal of his state court criminal conviction and he was now procedurally barred from doing so under state law.

The state appellate court, affirming the circuit court's denial of Bradley's post-conviction petition, stated that "[o]nly where application of the waiver doctrine would be manifestly inconsistent with fundamental theories will waiver not be invoked in post-conviction proceedings". *People v. Bradley*, 128 Ill.App.3d at 377, 83 Ill.Dec. 701, 470 N.E.2d 1121 (citations omitted). The Court found that the only issue to be determined was whether Bradley's post-conviction petition presented a "substantial showing of a denial of constitutional rights, which may not been deemed to have been waived". *Id.* The Court went on to hold that Bradley's petition for post-conviction relief presented no substantial showing of any violation of its constitutional rights. *Id.* at 384, 83 Ill.Dec. 701, 470 N.E.2d 1121.

■ If a state appellate court rules on the merits of a constitutional claim, but not on the state procedural question, federal habeas corpus review is available. *See Farmer v. Prast*, 721 F.2d 602, 605 n. 5 (7th Cir.1983); *United States ex rel. Williams v. Franzen*, 687 F.2d 944, 951 (7th Cir.1982); *Brownstein v. Director of Illinois Department of Corrections*, 594 F.Supp. 494, 500 (N.D.Ill.1984) *aff'd* 760 F.2d 836 (7th Cir.1985). Federal habeas corpus relief is precluded, however, where the state appellate court affirms a trial court decision on the twin grounds of lack of merit in a constitutional claim and the appellant's failure without justification to comply with the state's procedural rules. *Farmer*, 721 F.2d at 605. *See Jentges v. Milwaukee County Circuit Court*, 733 F.2d 1238, 1243 n. 1 (7th Cir.1984); *United States ex rel. Veal v. DeRobertis*, 693 F.2d 642, 650 (7th Cir.1982).

■ In the case at bar, the state appellate court reached the merits of Bradley's claim in order to determine if Bradley had waived his rights under state law to bring the constitutional claims in the post-conviction proceedings. Thus, the state appellate court reached the twin grounds of lack of merit in a constitutional claim and the failure to comply with state procedural rules resulting in a waiver of the claims in the state courts. Under *Farmer*, therefore, Bradley may not obtain federal habeas relief absent a showing of "cause and actual prejudice". *See Engle*, 456 U.S. at 129, 102 S.Ct. at 1572.

■ As Bradley may be deemed to have waived his claims by failing to present them to the Illinois appellate court after his state court criminal conviction, the petitioner maintains that his trial and appellate counsel's ineffective assistance constitutes "cause" for Bradley's procedural default and that therefore habeas corpus relief is not barred. In *United States ex rel. Spurlark v. Wolf*, 699 F.2d 354 (7th Cir.1983), a majority of the Court held that failure to raise a claim on direct appeal from a state court conviction barred federal habeas corpus relief unless the petitioner showed cause for and prejudice from the procedural default. *Id.* at 357–61. Ineffective assistance of counsel, however, may provide sufficient cause for a procedural default. *See Clay v. Director, Juvenile Division, Department of Corrections*, 749 F.2d 427, 430 (7th Cir.1984) and authorities cited. The term "cause" has been given a flexible definition that may change depending on the degree of prejudice shown. This is because cause is viewed "in terms of the nature of the procedural waiver and with an eye to the possible resulting prejudice." *Id.* at 434 quoting *Huffman v. Wainwright*, 651 F.2d 347, 351 (5th Cir.1981). "Cause" is thus defined in sufficient terms "to excuse a procedural default in light of the determination to avoid 'a miscarriage of justice'." *Clay*, 749 F.2d at 434 (quoting *Huffman*, 651 F.2d at 351). If prejudice is high, therefore, cause will be more easily found; conversely, where it appears that justice has been done, the requirement for showing both cause and prejudice will be strictly enforced. *Clay*, 749 F.2d at 434.

■ The question, therefore, for this court to examine is whether Bradley's counsel, both trial and appellate, were so ineffective as to create cause for exception to the federal habeas waiver rule.[2]

Beyond the issue as to whether or not Bradley's trial and appellate counsel were so ineffective as to constitute cause for precluding the application of the waiver doctrine, is the separate question as to whether the assistance of counsel rendered by Bradley's trial and appellate counsel was so ineffective as to render it in and of itself a violation of the Sixth Amendment. Under Illinois law, an ineffective assistance of counsel claim not raised on appeal may still be raised in a post-conviction proceeding under some circumstances. *See United States of America, ex rel. Devine v. DeRobertis,* 754 F.2d 764, 766 (7th Cir. 1985); *Perry v. Fairman,* 702 F.2d 119, 122 (7th Cir.1983). In the case at bar, Bradley at his post-conviction proceeding raised issues of incompetency of trial and appellate counsel at his post-conviction proceeding. The circuit court at the post-conviction proceeding held that Bradley's trial and appellate counsels' performance did not constitute incompetence of counsel; on appeal from the circuit court's decision in the post-conviction proceeding, the state appellate court concluded that Bradley received competent representation both in his trial counsel's performance throughout the proceedings and his counsel's performance on appeal. The state court, therefore, reached the merits of Bradley's ineffective assistance of counsel claim and that claim is now ripe for this court to review.

The court will first proceed to examine the petitioner's arguments for precluding the application of the waiver doctrine to those claims not raised at the direct appeal of his state conviction.

### III. DISCUSSION

#### A. Waiver Doctrine Preclusion

##### 1. Vague Statute Claim

Bradley argues that his trial counsel should have raised a attack on § 11–4(a)(3) of the Criminal Code of 1961, under which he was convicted for committing indecent liberties with his daughter, as unconstitutionally vague. *See* Ill.Rev.Stat. ch. 38, Para. 11–4(a)(3) (1983).

■ The Illinois appellate court specifically upheld the constitutionality of § 11–4(a) in *People v. Polk,* 10 Ill.App.3d 408, 294 N.E.2d 113 (2nd Dist.1973). The court in *Polk* held that the statute provides fair notice of what conduct is prescribed. *Id.* at 412, 294 N.E.2d 113. A penal statute is unconstitutionally vague when it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited [and] in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) *quoted in United States v. Rodgers,* 755 F.2d 533, 543–44 (7th Cir.1985). The requirement that criminal statutes must give fair warning of the conduct prescribed implicates due process and is a fundamental right. *See United States of America ex rel. Reed v. Lane,* 759 F.2d 618, 622 (7th Cir.1985) (citations omitted). The petitioner was convicted under § 11–4(a)(3) of the Illinois Criminal Code which provides:

(a) if any person of the age of seventeen years and upwards commits indecent liberties with a child when he or she performs or submits to any of the following acts with a child under the age of

---

**2.** Most courts that have addressed the issue have held that habeas petitioners are not necessarily required to establish a violation of their Sixth Amendment right to effective assistance of counsel to satisfy cause for a procedural default under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The courts generally have drawn a distinction between counsel's tactical decisions and ignorance or oversight. If the failure to object or appeal was a tactical decision by counsel, the petitioner is required to prove that the counsel's representation violated the sixth amendment. If the failure was due to counsel's ignorance or oversight, a lesser showing of incompetency is required. *Clay,* 749 F.2d at 433 n. 4 (citations omitted).

sixteen: ... (3) any lewd fondling of either the child or the person done or submitted to with the intent to arouse and to satisfy sexual desires of either the child or the person or both.

Ill.Rev.Stat. ch. 38, § 11–4(a)(3).

 The court does not find the statute so vague as to create any meaningful danger of arbitrary law enforcement; in any case, any problem with the notice that the statute does provide is alleviated by the intent requirement present therein. *See Rodgers,* 755 F.2d at 544. *See also Village of Hoffman Estates,* 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (intent requirement mitigating a law's vagueness, especially with respect to the adequacy of notice at the specific conduct is prohibited). A person of "ordinary" intelligence would understand that the acts with which the petitioner was charged were in violation of the statute at issue. Because this claim is without constitutional merit, the failure of counsel to pursue such a claim in either the trial court or on appeal does not constitute cause for precluding the application of the waiver doctrine.

2. Insufficient Information Claim

Bradley argues that his trial counsel's failure to move to dismiss the charges contained in information No. 81–CF–220 constitutes cause for precluding the application of the waiver doctrine. Bradley states that the information charging him with performing a lewd fondling did not allege specific facts constituting the offense and thus was not sufficient to inform him of the charge so that he could prepare his defense or to prevent his being subjected to another prosecution for the same offense. Tracking the language of the statute, the information charged that Bradley had committed the offense of indecent liberties with a child in that he, "a person of the age of seventeen years and upwards, performed a lewd fondling on Vicki Bradley, a child under the age of sixteen years, to-wit: fourteen years of age, done with the intent to arouse or to satisfy sexual desires of either Vicki Bradley or himself." Tr. 31.

 An information which alleges an offense in the language of the statute defining that offense is constitutionally sufficient if it (1) contains all the necessary elements of the offense, (2) informs the defendant of what he must be prepared to meet, and (3) enables him to plead conviction or acquittal as a bar to subsequent prosecution. *See Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–1047, 8 L.Ed.2d 240 (1962) *cited in United States ex rel. Ballard v. Bengston,* 702 F.2d 656, 660 (7th Cir.1983). The information in the case at bar contained all the necessary elements of the offense charged and informed the petitioner of the time and place of the offense and the persons involved.

 Bradley additionally argues that the information was void because it uses the disjunctive conjunction "or," thereby making it uncertain whether he was charged with committing the act with the intent to satisfy the desires of the victim or the desires of himself. Bradley, however, was charged at trial with but one act of lewd fondling. The use of the disjunctive conjunction "or" in setting apart the differing mental states did not render the charge uncertain in the indictment. As the information charged only one physical act, the petitioner's conviction serves as a double jeopardy bar despite the disjunctive pleading of the mental state element.

 As the information charging Bradley with lewd fondling was sufficient to inform him of the charge, to allow him to prepare his defense, and to prevent him from being subjected to another prosecution for the same offense, it was constitutionally sufficient. The failure of petitioner's trial and appellate counsel to raise this claim in the state courts, therefore, did not constitute "cause" for precluding application of the waiver doctrine.

3. Inadmissible Testimony Claim

Bradley claims that the trial court erred in admitting into evidence certain incriminating statements made by the petitioner

to a case worker, Gloria Bickley. The case worker testified at trial that Bradley voluntarily related to her an incident concerning his attempt to demonstrate to his daughter Vicki why he objected to her dating boys, where the petitioner had instructed his daughter to put her arms around him and kiss him upon which he then fondled her breasts. Tr. 67–70. Bradley told the case worker of the incident when she was visiting the Bradley home on November 16, 1981, to follow up on the Illinois Department of Children and Family Services investigation. Tr. 64.

Bradley argues that the admission of the case worker's testimony violated his constitutional right against self-incrimination under the Fifth Amendment and his right to assistance of counsel under the Sixth Amendment.

■■■ Bradley's claim that his right to counsel was denied by the admission of Bickley's testimony is without merit. The Sixth Amendment right to counsel attaches at the time adversary judicial proceedings are initiated against a person. *See United States ex rel. Johnson v. Lane,* 573 F.Supp. 967, 970 (N.D.Ill.1983) (citing *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977)). As formal charges had been filed against the petitioner prior to his interview by Bickley, the petitioner's right to assistance of counsel under the Sixth and Fourteenth Amendments had attached at the time he was interviewed. *See United States ex rel. Johnson,* 573 F.Supp. at 970. *See also People v. McDonald,* 23 Ill.App.3d 86, 90, 318 N.E.2d 489 (2nd Dist.1974) *aff'd* 62 Ill.2d 448, 343 N.E.2d 489 (1976) (once a defendant is charged either by information, complaint, or indictment in an adversary proceeding, then under Illinois law the defendant is entitled to counsel). The thrust of the petitioner's claim is that incriminating statements were deliberately elicited from him after the right to counsel had attached in the absence of counsel.

■■■ In *Messiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), such statements would not be admissible unless petitioner had waived his right to counsel. In *Messiah,* the Supreme Court stated that it was a violation of the Sixth Amendment right to counsel where a defendant's own incriminating statements were used against him at his trial, statements which had deliberately been elicited from him after he had been indicted and in the absence of his counsel. *See id.* at 206, 84 S.Ct. at 1203. The rule is that once adversary proceedings have commenced against an individual the defendant has the right to legal representation when the government interrogates that defendant. *See Brewer,* 430 U.S. at 400, 97 S.Ct. at 1240. Where a defendant has been formally charged and the government deliberately elicits incriminating statements from the defendant, such statements are inadmissible at the defendant's trial because they were obtained in violation of the defendant's right to counsel. *See United States v. Henry,* 447 U.S. 264, 274, 100 S.Ct. 2183, 2188, 65 L.Ed.2d 115 (1980); *Messiah,* 377 U.S. at 206, 84 S.Ct. at 1203; *United States v. Malik,* 680 F.2d 1162, 1164 (7th Cir.1982).

■■■ The question then is whether the government deliberately elicited incriminating statements from petitioner. Without addressing the question as to whether Bickley was acting as an agent for the state in interviewing the petitioner at his home, the court finds that there was no deliberate elicitation of incriminating information from the petitioner by Bickley. The record demonstrates that the petitioner freely relayed the information to Bickley. The petitioner, while not disputing that the statements were voluntarily made to Bickley, claims that the statements were made in the belief that such statements would be held in confidence and were for the sole purpose of family counselling to effect the return of the petitioner's children to his home. The petitioner claims that this reliance was based upon representations made by Bickley at the outset of their conversation. *See* Habeas Petition at 5F. Under Illinois law, however, a social worker is under an affirmative duty to report incidents of child abuse and no right of

privileged communication exists as to any conversations between the social worker and the alleged child abuser. *See People v. McKean,* 94 Ill.App.3d 502, 505, 50 Ill.Dec. 136, 418 N.E.2d 1130 (2nd Dist.1981). This court finds that the information testified to at trial by Bickley was freely relayed by the petitioner to her and was not obtained as a result of deliberate elicitation by Bickley. Therefore, Bradley's right to counsel was not violated when he made the statements to the case worker Bickley without his counsel being present.

▬▬▬ The petitioner also claims that the admission of the case worker's testimony violated his constitutional rights under the Fifth Amendment against self-incrimination. This claim is also without merit. A voluntary statement by a defendant not in response to interrogation is admissible at trial and not in violation of the defendant's Fifth Amendment rights against self-incrimination. *See Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). Protections afforded by *Miranda* are applicable to questions or interrogation initiated by a law enforcement officer after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id.* at 444, 86 S.Ct. at 1612. *See United States v. Stephens,* 543 F.Supp. 929, 940 (N.D.Ill.1982). The Fifth Amendment privilege protects against compelled self-incrimination; before a Fifth Amendment violation can be found, there must be some element of compulsion. Where there is no government authority present there can be no compulsion which *Miranda* rules shield against. *See United States v. Burton,* 724 F.2d 1283, 1288 (7th Cir.1984). There is a question here as to whether or not Bickley may be considered a "governmental authority." The court, however, does not need to reach that issue because it finds that the statements made by the petitioner were volunteered and were therefore admissible under *Miranda. See Miranda,* 384 U.S. at 478, 86 S.Ct. at 1629. Where the governmental authority "made no effort, overt or subtle, to interrogate [the defendant] or to elicit from him in any way any incrimina-

ting statements," the defendant's statements were admissible. *See United States v. Stephens,* 543 F.Supp. at 944 (quoting *United States v. Timpani,* 665 F.2d 1, 3 (1st Cir.1981)).

▬▬▬ In addition, the court finds that the petitioner was not "in custody" at the time of the interview with Bickley. The interview took place in the petitioner's house. The petitioner could have left or required the interviewer to leave at any time, and the petitioner's freedom was not restricted in any significant way. The petitioner's claim that Bickley's testimony violated his constitutional right against self-incrimination is without merit.

▬▬▬ As the petitioner's claims concerning the admissibility of Bickley's testimony at his criminal trial are without merit, the failure of his counsel to raise the issue in the state courts is not cause for precluding the application of the waiver doctrine to these claims.

### 4. Prosecutorial Misconduct Claim

The petitioner alleges that certain remarks made by the state in closing argument at his trial deprived him of a fair trial. Specifically, Bradley complains of the state's opening remark in rebuttal argument advising the jury that the state considered its ensuing argument to be a statement of fact was improper and not accurate. The petitioner also claims that he was prejudiced by the state's remark that the testimony of the case worker and Bradley's son evidenced their belief that the alleged acts had occurred. Bradley also states that the state's comment that the only defense was that Bradley's daughter fabricated the incident impermissibly drew attention to Bradley's failure to testify.

▬▬▬ In order to constitute a direct violation of the Fourteenth Amendment, the prosecutor's comment must have been misconduct so egregious that it deprived the defendant of a fair trial, thus making the resulting conviction a denial of due

process. *Donnelly v. DeChristophoro,* 416 U.S. 637, 643, 647, 94 S.Ct. 1868, 1871, 1873, 40 L.Ed.2d 431 (1974); *see United States ex rel. Shaw v. DeRobertis,* 755 F.2d 1279, 1281 (7th Cir.1985). The petitioner, therefore, must show that the alleged misconduct made his entire trial unfair; to show this, the petitioner must demonstrate that "it is at least likely that the misconduct complained of affected the outcome of his trial—i.e. caused the jury to reach a verdict of guilty when otherwise it might have reached a verdict of not guilty." *Shaw,* 755 F.2d at 1281 n. 1. If the petitioner fails to show a likelihood that the misconduct affected the outcome, the court must deny relief. *See id.*

In the rebuttal closing argument, the prosecutor stated: "You know this is called closing arguments but I don't really consider this an argument. I consider it a statement of fact." Tr. 117. The prosecutor further stated:

Vicki said she had intercourse with her father; sporadic memory? Yes, she had it. The question comes down to; did she make it up or did she have a lapse of memory. That is up to you. That is a question of fact. But I tell you that I find it unbelievable that not only could she make up such a story but get someone else to believe it, not only one person but two.

Tr. 118.

▇▇▇ While the state's assertion that its closing argument was "a statement of fact" was improper, it was not unconstitutionally improper, particularly in light of the trial court's instructions to the jury that closing arguments were made by the attorneys to discuss the facts and circumstances in the case and were not evidence in the case, and that any statement or argument made by the attorneys which was not based on the evidence should be disregarded by the jury. Tr. 89. Any harm caused by the prosecutor's statement was corrected by these instructions.

▇▇▇ Bradley also argues that when the prosecutor stated that the jurors were to believe the alleged victim because a case

worker and the alleged victim's brother believed her, this amounted to a misrepresentation of the testimony of the witnesses and a plea to the jury that they consider the testimony given for an improper purpose. Specifically, the prosecutor stated

You are being asked to believe by the defense this is the most amazing fourteen-year-old you have ever met. Not only can she make up a story like this, she can con a DCFS worker to believe her. She can con her brother who was obviously not here particularly willing into believing that she said what she said and coming into court and testifying about it. I find that absolutely amazing.

Tr. 117–18. The court does not find that this amounted to such improper conduct that Bradley was deprived of a fair trial.

▇▇▇ This is not a case where the prosecutor has attempted to bring into the closing argument facts not in evidence. *See Phelps v. Duckworth,* 757 F.2d 811, 823 (7th Cir.1985); *United States v. Harris,* 542 F.2d 1283, 1308–09 (7th Cir.1976); *United States v. Fearns,* 501 F.2d 486, 489 (7th Cir.1974). The court in the case at bar instructed the jury that any argument made by the attorneys which was not based on the evidence should be disregarded; thus, any misrepresentation made concerning the testimony of the witnesses was cured. As to the charge that the state attempted to get the jury to consider the testimony given for an improper purpose, it is without merit. The prosecution stated that they sought the admission of the testimony in order to corroborate the victim's testimony and show the relationship of the parties. Tr. 66. The trial court ruled the testimony admissible. *Id.* Any subsequent characterization of the testimony by the prosecution which went outside this purpose was corrected through the court's instructions to the jury.

▇▇▇ The petitioner also charges that the prosecutor's remarks in closing rebuttal improperly referred to the petitioner's failure to testify in his own behalf at the trial. The prosecutor stated: "We have

here a case where the only defense is Hey, she made it up. Well, is that good enough in Livingston?" Tr. 118. Direct reference by a prosecutor to a defendant's decision not to testify at trial is always a violation of the defendant's Fifth Amendment right against self-incrimination. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *United States of America ex rel. Burke v. Greer*, 756 F.2d 1295, 1300 (7th Cir.1985); *United States v. Rodriguez*, 627 F.2d 110, 111 (7th Cir.1980). It is also constitutionally impermissible for the prosecutor to *indirectly* refer to the defendant's failure to testify if "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify." *Burke*, 756 F.2d at 1300 (quoting *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir.), *cert. denied*, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968) citing *United States v. Wright*, 309 F.2d 735 (7th Cir.1962), *cert. denied* 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963) ).

Where the prosecution has made arguments that government testimony was "undenied" and "uncontradicted," the Seventh Circuit has found that the remarks were improper and were indirect references to the defendant's failure to testify, violating the defendant's Fifth Amendment rights. *See Burke*, 756 F.2d at 1302. *See also United States v. Beuge*, 578 F.2d 187, 189 (7th Cir.) *cert. denied* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978) (prosecutorial misconduct found where prosecutor repeatedly depicted testimony as "uncontradicted" where it was highly unlikely that at least a portion of the testimony could have been contradicted by anyone other than the defendant); *United States v. Fearns*, 501 F.2d at 490 (prosecutorial references to "undisputed testimony" were indirect references to the defendants' failure to testify

where there were no persons other than the defendants who could have disputed the prosecution witness' testimony apart from alibi witnesses); *United States v. Handman*, 447 F.2d 853, 855 (7th Cir.1971) (prosecutor's statement that government testimony was "intact, unchallenged and uncontradicted" constituted an indirect reference to the defendant's failure to testify); *United States v. Rodriguez*, 627 F.2d at 112 (prosecutorial misconduct required reversal of conviction where prosecutor drew attention to fact that defendant has been silent throughout trial).

■ The question, therefore, is whether the prosecutor, through her statement, drew attention, even subtle attention, to the failure of the defendant to testify.[3] The court finds that she did not. The prosecutor did *not* state that the state's evidence was "undisputed" or "uncontradicted" or remark as to the defendant's "silence." The prosecutor was, instead, characterizing the nature of Bradley's defense, that of attempting to refute the credibility of the testimony of the victim of the crimes with which he was charged. The language used by the prosecutor was not "of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify." *See Burke*, 756 F.2d at 1300. The prosecutor's argument, therefore, did not violate the petitioner's Fifth Amendment rights.

■ As there is no merit to the claim of prosecutorial misconduct, trial and appellate counsel's failure to raise the issue in the state courts does not constitute "cause" for precluding the application of the waiver doctrine to this claim.

5. Trial Judge Questioning Claim

The petitioner argues that the trial court's questioning of his daughter after

---

**3.** If a prosecutor is found to have improperly drawn attention to the failure of the defendant to testify, the next question is whether the defendant was prejudiced, since "[a]n arguably improper remark *will require determination of its probable effect on the jury in combination*

with all the evidence presented. If the evidence of guilt is sufficient to find beyond a reasonable doubt that the error was harmless, reversal may not be required." *United States v. Buege*, 578 F.2d 187, 189 (7th Cir.1978).

her examination by the parties deprived him of a fair trial in that the trial judge assumed a prosecutorial role.

 A trial judge may take an active part in the examination of witnesses during a jury trial. *United States v. Baron*, 602 F.2d 1248, 1249 (7th Cir.1979) *cert. denied* 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979); *United States v. Kidding*, 560 F.2d 1303, 1314 (7th Cir.1977) *cert. denied* 434 U.S. 872, 98 S.Ct. 217 (1977). The judge, however, may not conduct such questioning in a way as to give the appearance of partiality to the jury, thereby prejudicing the defendant. *See Baron*, 602 F.2d at 1249; *Kidding*, 560 F.2d at 1314; *United States v. Tobin*, 426 F.2d 1279, 1282 (7th Cir.1970); *United States v. Hill*, 332 F.2d 105, 106 (7th Cir.1964).

 The petitioner specifically alleges that during the state's presentation of its case, following the direct examination, cross-examination, and redirect examination of the state's witness Vicki Bradley, the trial judge asked a series of questions to the witness, in which he assumed the role of prosecutor.

At the close of the state's redirect examination, the court questioned Vicki Bradley as follows:

THE COURT: Did your parents bedroom have a door on it leading into the livingroom?

THE WITNESS: Yes.

THE COURT: Was there another way to get in and out of their bedroom?

THE WITNESS: No.

THE COURT: Can you remember whether the door was open or closed?

THE WITNESS: Could you please restate that?

THE COURT: Can you remember whether the door was open or closed at the time of the things that you have testified to here?

THE WITNESS: Closed.

THE COURT: Did the door lock?

THE WITNESS: Yes.

THE COURT: How did you go about locking it?

THE WITNESS: I did not.

THE COURT: Who did?

THE WITNESS: I am not for sure if it was locked or not.

THE COURT: How would you go about locking it, if you were to wish to have it locked?

THE WITNESS: You would pull it shut and then with one of them little hooks, you would hook it.

THE COURT: There was a hook and an eye?

THE WITNESS: Yes.

THE COURT: How many beds were in the bedroom?

THE WITNESS: One.

THE COURT: And how large a bed was it?

THE WITNESS: It was big enough for two people.

THE COURT: Was there other furniture in the bedroom too?

THE WITNESS: Yes.

THE COURT: What was it?

THE WITNESS: There was two dressers and like a dresser with a closet on it.

THE COURT: A chair?

THE WITNESS: No.

THE COURT: Where did these activities take place in the bedroom?

THE WITNESS: On the bed.

THE COURT: I have no further question.

You may step down, and thank you. Tr. 60–62.

Having examined the trial court's questioning of the witness in the context of the entire examination of the witness by all the parties, this court concludes that questions asked were not designed to and did not in fact prejudice the defendant. The trial court was merely attempting to clarify several points raised in direct and cross-examination by the parties in the case, namely, questions concerning if there was a lock on the parent's bedroom door, whether the door was locked during the alleged activities, and what furniture was in the bedroom. The questions posed in no way com-

municated the judge's beliefs to the jury concerning the defendant's guilt. Unlike the *Tobin* and *Hill* cases, where the judge interrogated the defendant himself, here the objection by the petitioner is to questions posed by the trial judge to a government witness which the petitioner claims undercut his cross-examination of the witness establishing her lack of credibility through demonstrating her lack of recollection of details of the events alleged.

 This court finds that the trial judge's questioning was not so intrusive or prejudicial as to make the petitioner's trial fundamentally unfair. The petitioner's trial counsel's failure to challenge this questioning at trial or his appellate counsel's failure to raise the issue on appeal did not constitute "cause" for precluding waiver of this claim in this court.

### 6. Double Jeopardy Claim

The petitioner was initially charged with committing indecent liberties with his daughter through sexual intercourse and lewd fondling on November 2, 1981, in information No. 81–CF–220. Prior to trial, the additional charge of having committed indecent liberties with his daughter through lewd fondling on November 3, 1981, in information No. 81–CF–234, was added. Information No. 81–CF–234 was dismissed with prejudice by the trial court on the state's *nolle proseque* motion, after the jury was impaneled. The petitioner was subsequently convicted of the lewd fondling of his daughter on November 2, 1981. The petitioner asserts that "cause" is established because his trial counsel failed to raise a double jeopardy claim at trial, and his appellate counsel failed to raise the claim on appeal.

 The Fifth Amendment Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense. *United States ex rel. Clauser v. McCevers*, 731 F.2d 423, 425 (7th Cir.1984) (citing *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1078, 47 L.Ed.2d 267 (1976)); *see United States ex rel. Woollums v. Greer*, 728 F.2d 918, 920 (7th Cir.1984). Specific to the facts in the case at bar, double jeopardy prevents a second prosecution for the same offense after acquittal. *See Woollums*, 728 F.2d at 920. The petitioner argues that since jeopardy attaches when the jury is impaneled and sworn, *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), he could not be prosecuted by the state for any lewd fondling taking place on November 3, 1981, as the charge in the information relating to events on that date was dismissed with prejudice. Bradley contends that the jury in his criminal trial in fact convicted him for acts occurring on November 3, 1981, rather than on November 2, 1981. The petitioner points to three events which lead to this conclusion. In its opening statement, the prosecutor referred to the act of lewd fondling as occurring on November 3, 1981. Tr. 38. Also, during the cross-examination of Vicki Bradley, the witness referred to the incident of lewd fondling as occurring on November 3, 1981. Tr. 51. In addition, the petitioner notes that the jury was instructed that if they found that Bradley committed the offense charged, they need not find that it was committed on the particular date charged, November 2, 1981. Tr. 93.

 It is apparent from the record that there was sufficient evidence before the jury which demonstrated that the petitioner was convicted for events that occurred on November 2, 1981, *not* November 3, 1981. The witness Vicki Bradley in several instances specifically testified that the events in question occurred November 2, 1981. Tr. 45, 52. Any conflicting testimony given by the witness reflected upon her credibility, a question for the jury's consideration.

While it is true that the prosecutor in her opening comments did refer to the charged offense as having occurred November 3, 1981, this reference was to what Vicki Bradley would testify to at trial. Vicki Bradley, in fact, testified to events she stated occurred on November 2, 1981. In any event, the opening remarks by the prosecutor were not evidence, and the jury

was so charged. Tr. 89. The single reference by the prosecutor in opening statements does not lead to the conclusion that the jury convicted the petitioner for the events alleged to have occurred on November 3, 1981.

■ The petitioner also claims that the trial court improperly charged the jury that if they found that Bradley had committed the offense, the prosecutor did not need to prove that the events occurred on the date charged, that is, November 2, 1981. Tr. 93. "[N]ormally time is not a material element of a criminal offense unless made so by the statute creating the offense ... and that the 'on or about' instruction is normally proper." *United States v. King*, 703 F.2d 119, 123 (5th Cir.1983) *cert. denied* 104 S.Ct. 127 (citations omitted). The petitioner asserts, however, that the instruction given to the jury resulted in his being convicted of the November 3, 1981, charge, and that the instruction should have specified that the state had to prove that the events charged at trial in fact occurred on November 2, 1981.

The court finds that instruction given was proper and the petitioner's double jeopardy rights were not violated. The instruction given by the trial court was proper, as time was not a material element of the charged criminal offense. Nor was the petitioner prejudiced by the given instruction. The petitioner was allowed to cross-examine the state's key witness, Vicki Bradley, at length and attack her credibility; in addition, the trial court instructed the jury that it was sufficient if they found that the offense charged occurred, and the government was not required to prove the offense occurred on the particular day charged. *Cf. King*, 703 F.2d at 124 (citing *United States v. Arteaga-Limones*, 529 F.2d 1183, 1194 (5th Cir.) *cert. denied* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976)).

■ The fact that the petitioner had been originally charged with the lewd fondling of Vicki Bradley on November 3, 1981, before that charge was dismissed, did not lead to confusion among members of the jury resulting in the conviction of the petitioner for events occurring on November 3, 1981. At the beginning of the trial, the indictment was read to the jury, and it specified the date of the charged offense as November 2, 1981. This date was referred to during the trial and the jury instructions referred to the indictment in defining the offense as lewd fondling having occurred on November 2, 1981. Since this court finds that no confusion was caused, the trial court did not err in stating that the government was not required to prove that the charged offense occurred on the particular date charged, November 2, 1981. *See United States v. Underwood*, 588 F.2d 1073, 1077 (5th Cir.1979) *re'hrg denied* 591 F.2d 102 (1979).

■ Having carefully reviewed both the record and the jury charge, the court concludes that the petitioner was *not* subjected to double jeopardy by his conviction. The petitioner was *not* subject to a second prosecution for the charge against him concerning events occurring on November 3, 1981, the charge that was dismissed with prejudice subsequent to the impaneling of the jury. As the double jeopardy claim was without merit, the failure of petitioner's trial counsel and appellate counsel to raise the claim does not constitute "cause" for precluding application of the waiver doctrine as to this claim.

7. Denial of Prompt Preliminary Hearing Claim

The petitioner asserts that he was denied a prompt preliminary hearing and probable cause determination prior to being held for trial.

■ The information charging the petitioner was filed on November 6, 1981; Bradley's preliminary hearing was set for November 23, 1981. At the scheduled hearing, the state moved for a continuance because it had summoned the wrong case worker as a witness. The trial court rescheduled the hearing for December 8, 1981. The petitioner claims that the delay in having this preliminary hearing denied

him of his rights to due process. The court concludes, however, that under the facts of the case, the delay resulting from the granting of the continuance did not deprive the petitioner of a fundamentally fair trial.

 The petitioner also states that there was never any probable cause determination at the time of the December 8, 1981, preliminary hearing as to the charge of lewd fondling.

At the preliminary hearing and arraignment of the petitioner on information No. 81–CF–220, charging Bradley with two counts of indecent liberties with a child, the trial court, after a full adversarial hearing, including the examination of witnesses, found that based on the evidence in the hearing, there was probable cause to believe that an offense had been committed by the petitioner for which he should be held to answer. Tr. 16. The preliminary hearing concerned *both* counts under information No. 81–CF–220, the charge of sexual intercourse and the charge of lewd fondling. Based on the evidence before the trial court, a probable cause determination as to both counts was made and was proper.

 As there is no merit to the claim, "cause" did not exist which would preclude waiver of the claim before this court because of trial and appellate counsel's failure to raise the claim before the state courts.

### 8. Prosecutorial Bad Faith Claim

The petitioner claims that his constitutional rights were violated by the action of the prosecutor in the *nolle prosequi* of information No. 81–CF–234 after the jury had been sworn, in that it suggested the petitioner's guilt as to charges which were not to be tried.

In its opening comments to the jury venire, the trial judge discussed the charges being brought against the petitioner, including at that time, the charges under case 81–CF–234. Tr. 31–32. After a jury panel was selected, the prosecutor moved to dismiss the charges brought under infor-

mation No. 81–CF–234. Without objection from the petitioner's counsel, the motion was granted, and the jury was instructed that the case 81–CF–234 had been dismissed on motion of the prosecutor. Tr. 34–36.

 This court finds no resulted prejudice to the petitioner from the dismissal with prejudice of case 81–CF–234. This court likewise finds no evidence of bad faith on the part of the prosecutor in withdrawing the charge from the trial. Therefore, petitioner's trial and appellate counsel's failure to raise the claim in the state courts did not constitute "cause" precluding application of the waiver doctrine.

### 9. Evidence of Other Crimes Claim

The petitioner alleges that the state introduced into evidence other uncharged acts of indecent liberties by petitioner upon Vicki Bradley in violation of petitioner's Fifth, Sixth, and Fourteenth Amendment rights. The petitioner further alleges that the trial judge's instructions the jury permitted the jury to find the petitioner guilty of such uncharged acts.

 The court has examined the record at length and finds no error of constitutional significance. Under Illinois law, in prosecution of a defendant for indecent liberties with his minor daughter, it is not error to admit evidence of prior sexual acts between the defendant and his daughter. *People v. McMillan,* 86 Ill.App.3d 208, 211, 41 Ill.Dec. 15, 407 N.E.2d 207 (2nd Dist. 1980). Such testimony is deemed proper to show the relationship and familiarity of parties notwithstanding the argument that the testimony should have been confined to the particular charged offense and claim that the court might have found the defendant guilty on the basis of prior acts. *See People v. Cleveland,* 83 Ill.App.3d 675, 682, 39 Ill.Dec. 285, 404 N.E.2d 876 (1st Dist.1980); *People v. Wendt,* 104 Ill.App.2d 192, 205–06, 244 N.E.2d 384 (1st Dist.1968). The admission of Vicki Bradley's testimony as to other indecent liberties encounters between herself and the petitioner were

proper under Illinois law. The court finds that the admission of the testimony did not amount to any violation of the petitioner's constitutional rights. Failure of appellate counsel to raise the claim on direct appeal is not "cause" for precluding application of the waiver doctrine as to this claim.

## 10. Summary

The court, after an exhaustive discussion of the petitioner's claims, concludes that the petitioner has failed to demonstrate "cause" for the failure of his trial and appellate counsel to raise these claims before the state courts. Under *Reed v. Ross* and *Engle v. Isaac*, therefore, this court must find that the petitioner has "waived" his right to bring these constitutional claims before this court and is precluded from habeas corpus relief as to them.

### B. Ineffective Assistance of Counsel

As a separate claim, the petitioner seeks habeas relief on the ground that the performance of his trial and appellate counsel was so ineffective as to be an independent violation of the petitioner's Sixth Amendment rights. As discussed previously, this claim was not waived, and will be decided by this court on its merits.

■■■■ The proper standard for attorney performance is that of "reasonably effective assistance." *See Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). Therefore, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* Where a convicted defendant claims that counsel's assistance was so defective as to require reversal of a conviction, in addition to showing that counsel's performance was deficient, the deficient performance must have prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* 104 S.Ct. at 2065. The Due Process Clause of

the Fourteenth Amendment also guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, —— U.S. ——, ——, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985).[4]

■■■■ The court finds that the petitioner's trial and appellate counsel both gave "reasonably effective assistance" to the petitioner and, therefore, his Sixth and Fourteenth Amendment rights were not violated. The petitioner's trial counsel objected to matters raised at trial, cross-examined state witnesses, moved for a directed verdict at the close of the state's case, and gave an effective closing statement challenging the credibility of the state's witnesses and its failure to prove its case against the petitioner. In addition, the petitioner's trial counsel moved for a new trial, and called witnesses to testify at the sentencing hearing. Considering all the circumstances, the trial counsel's representation did not fall below an objective standard of reasonableness, and no prejudice resulted to the petitioner which adversely affected the outcome of his trial.

■■■■ Nor was the petitioner's appellate counsel so incompetent as to violate the petitioner's due process rights under the Fourteenth Amendment. A criminal defendant is guaranteed effective assistance of counsel on his first appeal as of right, *see Evitts*, —— U.S. at ——, 105 S.Ct. at 835; in the case at bar, the petitioner's appellate counsel gave reasonably effective assistance. Although the appellate counsel only raised one ground for relief on direct appeal, namely, the propriety of the sentence given the petitioner, this was a tactical decision by the attorney to focus on one central issue; under the circumstances of the case, the decision by the appellate counsel was reasonable. *See Jones v. Barnes*, 463 U.S. 745, 748–57, 103 S.Ct. 3308, 3311–15, 77 L.Ed.2d 987 (1983). Moreover, no prejudice resulted from the appellate counsel's representation which adversely affect-

---

**4.** The Supreme Court stated that it expressed no opinion as to the content of appropriate standards for judging claims of ineffective assistance of appellate counsel. *Evitts*, —— U.S. at —— n. 8, 105 S.Ct. at 436 n. 8. This court will apply, in the absence of other guidelines, the "reasonably effective assistance" standard to appellate counsel's performance.

ed the outcome of the petitioner's case. As discussed previously in this opinion, the claims waived by the appellate counsel in not bringing them before the state appellate court were without merit, and thus would not have affected the disposition of the petitioner's case.

The court finds that the petitioner was not unconstitutionally deprived of his right to reasonably effective trial and appellate counsel.

## IV. CONCLUSION

The court concludes that the constitutional claims concerning petitioner's trial raised before this court were waived by the failure to present them to the state courts. The court also concludes that there was no denial of effective assistance of trial and appellate counsel. Therefore, the court hereby enters summary judgment in favor of the respondents. The petition for writ of habeas corpus is denied. IT IS SO ORDERED.